William Arch TALIAFERRO and Doris Jean Davis, Co-Executors of the Estate of Mary Spann Taliferro Bellenfant, Deceased, Plaintiffs-Appellees,

v.

Janice P. GREEN and Ben Green, Individually and Co-Executors of the Estate of Marvin Bellenfant, Deceased, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

Aug. 10, 1981.

Permission to Appeal Denied by Supreme Court Oct. 13, 1981.

Thomas L. Reed, Jr., Reed, Rogers & Trail, Murfreesboro, for plaintiffs-appellees.

Frank C. Gorrell, Judith A. Powell, Nashville, Bass, Berry & Sims, Tyler Berry, III, Berry & Berry, Franklin, for defendants-appellants.

## OPINION

LEWIS, Judge.

This is an appeal from a jury verdict in a will contest involving two wills.

The pertinent facts are as follows: The testator Marvin Bellenfant was of infirm health, having suffered multiple strokes, and had been in and out of nursing homes and hospitals for several years before his death on July 29, 1977, at the age of sixty-nine. At various times he executed four wills. The first, executed in August, 1972, chiefly benefited his niece, Janice Green who, with her husband Ben Green, is defendant-appellant, hereafter referred to as appellants or Greens. The second will, executed in November, 1975, excluded Janice Green but benefited certain other relatives of the testator, among them the children of Janice Green. The third will, executed in July, 1976, left all of the testator's property to Mary Taliaferro Bellenfant, whom he married in August, 1976, and who predeceased him by a few days. The fourth and final will, executed in March, 1977, princi-pally benefits Janice Green. Ben Green is also a beneficiary under this will.

The July, 1976 and March, 1977 wills are involved in this contest. The children of Mary Taliaferro Bellenfant by a prior marriage are plaintiffs-appellees and are hereafter referred to as appellees or Taliaferros.

The Taliaferro children challenge the 1977 will on the basis of undue influence and lack of testamentary capacity. The Greens challenge the 1976 will on the basis of undue influence. The jury found against the 1977 will and upheld the 1976 will.

The facts show that the testator was very close to his niece Janice Green and for many years he apparently intended to leave the bulk of his property to her upon his death. In 1974, the testator suffered one or more strokes which left him partially unable to speak, partially paralyzed, and not in complete control of his bowel and bladder functions. The Greens attempted to keep the testator in their home for approximately six weeks until July 12, 1975, when he was placed in Harpeth Terrace Nursing Home.

Because of his displeasure and resentment at being placed in the nursing home, the testator drew the November, 1975 will excluding Janice Green and benefiting certain other relatives. In July, 1976, he drew the third will leaving all of his property to Mary Taliaferro who had agreed to marry him and take him out of the nursing home. The testator and Mrs. Taliaferro, who had first dated one another in high school, were married on August 20, 1976.

The record reveals that the Greens retained their attorney, Mr. Tyler Berry, Jr., to investigate whether the testator was competent to make a will and to enter into a marriage contract at that time. Mr. Berry, on behalf of the Greens, employed a psychiatrist to examine the testator on August 7, 1976. The psychiatrist's conclusion was that the testator was competent both to draw a will and to enter into a marriage.

Both the 1975 and the 1976 wills were prepared by Mr. Mabry Covington, who was the testator's attorney and who had handled his taxes and other affairs.

On March 18, 1977, the testator executed the fourth will, principally benefiting Janice Green. This will was prepared by Mr. Tyler Berry, Jr., the Greens' attorney, who had never previously represented the testator. Mr. Berry's fee for preparing the will was paid by the Greens. The testator was, at the time of the execution of the March, 1977 will, confined to Williamson County Hospital. Ben Green was present at the execution of the will. Janice Green was present for at least a portion of the proceedings.

Immediately prior to the execution of the March, 1977 will, Mr. Berry, in behalf of the Greens, caused the testator to be examined by two physicians and a psychiatrist to determine his competency to make a will. The record discloses that after the March 18, 1977 will was executed, Mr. Green kept it in his bank box and that it was not mentioned to anyone until after the death of the testator.

On this appeal the Greens challenge the Trial Court's instructions to the jury on burden of proof, undue influence, and testamentary capacity. However, before proceeding to consider the issues raised by the Greens, it is necessary that we discuss a procedural issue raised by the Taliaferros.

■ The Taliaferros contend that the Greens' failure to object to the instructions at the time of trial bars them from doing so now under TRCP 51.02. The Greens respond that no objection at trial is required under the rule to preserve for appeal an allegation of affirmative error in the charge. We agree.

■ Under Rule 51.02, a charge which is erroneous not merely because of an omission but because it mis-states the law and misleads the jury can be assigned as error on appeal even if there has been no objection at trial. *State ex rel. Smith v. Hoganson*, 588 S.W.2d 863 (Tenn.1979); *Rule v. Empire Gas Corp.*, 563 S.W.2d 551 (Tenn. 1978). However, in order to predicate error upon an alleged omission in instructions given to the jury, a party must have pointed out such an omission to the trial judge at

trial by a request for appropriate instructions. *Rule v. Empire Gas Corp.*, 563 S.W.2d at 554. *See also Valentine v. Conchemco, Inc.*, 588 S.W.2d 871 (Tenn.App. 1979).

We discuss the Greens' second issue first: "Whether the Trial Court erred in instructing the jury by enumerating factors to be considered in determining whether a will is void for undue influence."

That portion of the Trial Court's charge here objected to the appellants reads as follows:

A Will which is brought about by undue influence may not be admitted to probate. Undue influence consists of acts or conduct by which the mind of the Testator or the decedent is overcome by the will of another person. Mere general influence not brought to bear on the testamentary act; that is, the making of the Will, is not undue influence. In order to constitute undue influence that influence must have been used to bring about the Will. It must amount to coercion, destroying the free agency of the Testator, substituting for his own will another person's will and compelling the Testator to make a disposition he or she would otherwise not have made.

In determining the issue of undue influence you may consider among other things evidence which answers these questions: (1) Do the provisions of the Will prefer strangers in blood to the natural objects of the decedent's bounty. (2) Does the Will unduly benefit the chief beneficiaries thereof. (3) Is there a variance between the terms of the Will and the expressed intentions of the Testator. (4) Was there an opportunity afforded by the chief beneficiary's relationship to the decedent to influence the decedent. (5) Was the decedent's mental and physical condition such as to permit an overthrowing of his freedom of will. (6) Were the chief beneficiaries under the Will active in procuring it to be executed. A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another.

If you find that a confidential relationship existed between the decedent and either Mr. and Mrs. Ben Green—that would be Janice Green and Ben Green—or Mary Spann Taliaferro Bellenfant, and that he, she, or they, were active in procuring the Will and unduly profiting from it, then the Law presumes that the Will was procured by the undue influence of the parties so afore-stated, unless he, she, or they, established by a preponderance of the evidence that the making of the Will was not the result of undue influence.

In their brief, the Greens state:

The charge to the jury regarding undue influence listed six factors to be considered in determining undue influence; appellants submit that the factors enumerated unduly favored the position of contestants of the 1977 will, tending toward a finding of undue influence. *While the six factors may be technically correct, a fair charge requires that they be explained clearly and fully, which was not done.* (Emphasis supplied.)

The Greens thus do not dispute the accuracy of the charge but merely contend that it should have been explained more elaborately. But the Greens did not object to the instruction at trial, nor did they request any better or more complete instruction among the requests for special instructions which they submitted to the Trial Court. Therefore, under Rule 51.02 and the cases cited above, they are precluded from raising the issue now.

■ The factors listed by the Trial Court were appropriate ones for the jury to consider in determining the existence of undue influence in any case. *See generally* 94 C.J.S. *Wills* § 224. A proper instruction on undue influence need not be made more specific unless requested. 95 C.J.S. *Wills* § 473. The gist of the Greens' objection to this charge appears to be twofold. *One*, the first two factors misled the jury because a decedent may dispose of his property by will in any way he sees fit, and *two*, the remaining factors were, for various reasons, inappropriate to the facts of the case. As

to the first objection, the Court specifically charged the jury:

Every person of sound mind over the age of 18 years has the right to make a Will directing the disposition of his or her property upon his or her death in any way that he or she sees fit. He or she is under no obligation to make such a disposition as will meet with the approval of a Judge or a Jury.

As to the second, this was a question for the jury. If the jury felt the evidence did not show the factors to exist, they were not to consider the factors. This is clear from the Judge's charge. So this issue would be determined adversely to the Greens even were they free to raise it.

The Greens' third issue is: "Whether the Trial Court erred by instructing the jury regarding lack of testamentary capacity . . . ."

■ That portion of the Trial Court's charge here challenged by the Greens reads as follows:

A Will, which at the time of its execution is made by a person who is not of sound and disposing mind, is not valid. The text for determining if the person is of sound and disposing mind is whether at the time of making his Will he has sufficient mental capacity to be able; (1) to understand the nature of the act that he's doing—he or she is doing; (2) understand and recollect the nature of, and the situation of his or her property; and, (3) to remember and understand his relation to his living descendants, spouse, and those whose interest will be affected by the Will. Mental incompetency to make a Will must be shown to have existed at the very time that the Will was executed, although evidence of mental unsoundness before or afterward must be considered in determining the decedent's mental condition at the time the Will was executed.

Here the Greens basically object to the Court's telling the jury that it "must" consider the condition of the testator after execution of the 1977 will in deciding whether he had testamentary capacity at

the time of execution of the will. The Greens say the Court should have told the jury that it "may" consider such evidence.

The Greens cite *American Trust & Banking Co. v. Williams*, 32 Tenn.App. 592, 225 S.W.2d 79 (1948), for the proposition that events after the execution of a will are entitled to little weight in the determination of testamentary capacity. Such is not the holding of that case.

In determining testamentary capacity, the mental condition of the testator at the very time of executing the will is the only point of inquiry; but evidence of mental condition both before and after making the will, if not too remote in point of time, may be received as bearing upon that question.

Insofar as it has a reasonable tendency to bear upon the mental capacity of the testator when the will was executed, evidence of his physical condition both before and after the date of the will is also admissible. But, apart from its effect upon the mind, the physical condition of the testator has no bearing on the issue

. . . .

"Where a testator's sickness is wholly physical, proof of his condition as to lethargy, suffering, or unconsciousness on days preceding or following the execution of the will is entitled to very little consideration." (Citation omitted.)

32 Tenn.App. at 603, 225 S.W.2d at 84.

Here the evidence related not to lethargy, suffering, or unconsciousness of the testator but to the uncontested fact that he had suffered multiple strokes. The Trial Judge specifically cautioned the jury to consider evidence of the testator's mental condition, both before and after the will, "only so long as such matters have a reasonable tendency to indicate his or her mental condition at the time of the execution of the will."

In *American Trust* the Court found that there was no evidence of mental unsoundness for the jury to consider. 32 Tenn.App. at 604–05, 225 S.W.2d at 84–85. In the case at bar the jury heard testimony that the testator had suffered some mental impair-ment because of the strokes; that there had been changes related to poor nutritive functioning of the brain; that the testator had suffered some mental deterioration as early as 1975; that he suffered from arteriosclerosis or hardening of the arteries affecting the brain; that he suffered from chronic alcoholism; that on the day before he executed the 1977 will he had received a "good-sized" dose of a medication which could have affected his mental condition. One witness testified that at about the same time the will was executed, the testator had slapped milk of magnesia and water out of her hands and that testator had repeatedly grabbed the guests of a patient who shared his room.

We think it also significant that the Greens themselves felt it necessary to secure the opinions of two physicians and a psychiatrist as to testator's testamentary capacity immediately prior to the execution of the March, 1977 will.

The jury was entitled and, in fact, had the duty to consider such evidence within the limits and for the purpose described to it by the Trial Court.

The Greens' first issue is: "Whether the Trial Court erred in instructing the jury with a general charge regarding the burden of proof in a will contest."

The Greens take exception to the Trial Court's overall charge (1) regarding the burden of proof in the case, (2) to his treatment of burden of proof as it regards undue influence, and (3) to his treatment of burden of proof as it regards testamentary capacity.

The specific portion of the charge objected to by the Greens reads as follows:

The Plaintiffs in this case have the burden of proving each and every element of their claim by a preponderance of the evidence. With respect to any affirmative defense the Defendant has the burden of establishing all the facts necessary to prove such affirmative defenses by a preponderance of the evidence. In determining whether a party has carried the burden of proof you must

not engage in speculation or conjecture. Your findings must be based upon the evidence in the case and inferences that may be reasonably drawn from the evidence. By the preponderance of the evidence is meant simply the greater weight and value of all the evidence in the case. Another way of stating it is that the burden of proof is carried if, from all the evidence, you find that it is more probable than not that the facts are as contended by the party having the burden of proof. The Greens have the burden of proof of the March, 1977 Will, and Mr. Taliaferro and Mrs. Davis have the burden of proof with the July, 1976 Will. In ascertaining where the preponderance of all the evidence is you will not be guided alone by the number of witnesses who have testified in favor or against another party, because evidence must be considered and weighed with reference to its value, and not merely with reference to the number of witnesses who may have testified.

In a will contest the initial burden is upon the proponent of the will to show its prima facie validity and this is a question for the determination of the court. Upon the proponent's satisfactorily showing prima facie validity, the burden shifts to the contestant and, generally, the burden is upon the contestant to show facts relied upon to void the will. *Keys v. Keys*, 23 Tenn.App. 188, 129 S.W.2d 1103 (1939); *Cf. Burrow v. Lewis*, 24 Tenn.App. 253, 260–61, 142 S.W.2d 758, 762–63 (1940). Thus, it was error for the Trial Judge to charge the jury, "The Greens have the burden of proof of the March, 1977 will, and Mr. Taliaferro and Mrs. Davis have the burden of proof with the July, 1976 will." While this was error, since the burden of proof lay upon the contestants of the 1977 will (the Taliaferros) and the burden of proof lay upon the contestants of the 1976 will (the Greens), the error was cured by the Trial Court's charging the following:

With regard to both of those Wills, the Proponents of each Will would be the person, or persons, who allege that that particular Will is the lawful and valid and proper Will of Marvin Bellenfant. Once the Proponent of each Will has proven by competent witnesses—have formally proved by competent witnesses, that each Will has the Will of the Testator, then the burden of proof shifts to the Contestant to show that that was not the Will.

This is a correct statement and cured whatever error existed in the Trial Court's prefatory language.

The Greens assert that the Trial Court's charge was incorrect regarding burden of proof as to undue influence. The portion of the charge cited by the Greens, however, does not address itself to the question of burden of proof of undue influence. The Trial Judge did address that question in his charge regarding undue influence *supra*:

If you find that a confidential relationship existed between the decedent and either Mr. and Mrs. Ben Green—that would be Janice Green and Ben Green—or Mary Spann Taliaferro Bellenfant, and that he, she, or they, were active in procuring the Will and unduly profiting from it, then the Law presumes that the Will was procured by the undue influence of the parties so afore-stated, unless he, she, or they, established by a preponderance of the evidence that the making of the Will was not the result of undue influence.

This is substantially the same charge approved in *Thomas v. Hamlin*, 56 Tenn.App. 13, 36–37, 404 S.W.2d 569, 579 (1964), and in *Kelley v. Brading*, 47 Tenn. App. 223, 231, 337 S.W.2d 471, 475 (1960). It is an accurate summary of the law. As a general rule it is presumed that neither fraud nor undue influence entered into the making of a will and ordinarily the contestant who alleges fraud or undue influence has the burden of proof on these issues. *Hammond v. Union Planters National Bank*, 189 Tenn. 93, 222 S.W.2d 377 (1949); *Haynes v. Mullins*, 30 Tenn.App. 615, 209 S.W.2d 278 (1947). Where, however, the contestant shows the existence of suspicious circumstances such as a confidential relationship in combination with the benefi-

ciary's involvement in procuring the will, or in combination with impairment of the testator's mental capacity, there arises the presumption of fraud or undue influence which the proponent of the will must overcome by a preponderance of the evidence. *Halle v. Summerfield*, 199 Tenn. 445, 287 S.W.2d 57 (1956); *Thomas v. Hamlin, supra; Kelley v. Brading, supra.*

The Greens, relying on *Brown v. Hows*, 163 Tenn. 138, 40 S.W.2d 1017 (1931), an election contest case, insist that once sufficient evidence has been presented to raise the presumption of undue influence, the introduction of any credible evidence to the contrary meets the proponent's burden of proof and "[t]hereafter, if a contestant fails to introduce further evidence regarding undue influence, the will must be upheld." We disagree.

■■■ "The presumptions which arise on the showing of a personal or confidential relation, together with suspicious circumstances, are presumptions of fact which may be rebutted. However, the effect of such rebutting testimony is not to make the presumption disappear but to raise an issue for the jury." 94 C.J.S. *Wills* § 239. The type of presumption discussed in *Brown v. Hows, supra*, was an example of what are known as bare or arbitrary presumptions, which are to be distinguished from presumptions which arise from facts through a process of logical inference. *Southern Motors, Inc. v. Morton*, 25 Tenn.App. 204, 213, 154 S.W.2d 801, 806 (1941); *see also Bryan v. Aetna Life Insurance Co.*, 174 Tenn. 602, 613, 130 S.W.2d 85, 89 (1939); *Bryan v. Aetna Life Insurance Co. No. 4*, 25 Tenn. App. 496, 501, 160 S.W.2d 423, 426 (1941).

Under the practice in this state the burden of proof, in its usual and primary meaning, as the risk of nonpersuasion of the trier or triers of fact, never shifts, but remains throughout the trial where it was in the first instance. The burden of producing evidence may, however, shift from time to time in the course of the trial. One way in which this is brought about is by means of presumptions which the law raises upon proof of certain facts; that is to say, in some instances the law attaches to a given state of facts certain procedural consequences with respect to the duty of producing countervailing evidence by an opponent. A learned discussion of the subject is to be found in the leading case of *North Memphis Savings Bank v. Union Bridge & Construction Co.*, 138 Tenn., 161, 196 S.W., 492. See also, *Shockley v. Morristown Produce & Ice Co.*, 158 Tenn., 148, 11 S.W.(2d), 900; *Lewis v. Casenburg*, 157 Tenn., 187, 7 S.W.(2d), 808, 60 A.L.R., 254; *Whipple v. McKew*, 166 Tenn., 31, 60 S.W.(2d), 1006.

The "effect of a presumption 'of law' (that is the real presumption)" says Dean Wigmore in his treatise on Evidence, "is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent." 5 Wigmore on Evidence (2 Ed.), Sec. 2491. But it is important to know that a presumption of this kind adds nothing to the probative force of the facts that give rise to it and when its purpose has been accomplished, that is, when the party against whom it is raised has produced countervailing evidence, the presumption disappears and the question for decision then is whether the preponderance of the evidence with respect to the determinative issue or issues is with the party who had the burden of proof in the first instance. *Whipple v. McKew*, supra; see *Central of Georgia Railway Co. v. Fuller Combing Gin Co.*, 2 Tenn. Civ.App. (2 Higgins), 343.

As the Court very aptly observed in *Frank [v.] Wright*, 140 Tenn., 535, 548, 205 S.W., 434, 437, presumptions are raised to take the place of proof and "where the proofs are present there is neither foundation nor room for the presumption."

*Illinois Central Railroad Co. v. H. Rouw & Co.*, 25 Tenn.App. 475, 479–80, 159 S.W.2d 839, 842–43 (1940). Thus, upon finding the existence of a confidential relationship in combination with one or more of the other necessary elements, the jury is required to find undue influence as well, unless the

proponent has come forward with other evidence to the contrary. If the proponent has come forward with such evidence, the presumption, in the sense that it is conclusive, drops out, as the Greens say, but the consequence is not that "the will must be upheld," but that "the question for decision then is whether the preponderance of the evidence with respect to the determinative issue or issues is with the party who had the burden of proof in the first instance." *Id.* at 480, 159 S.W.2d at 843.

 It is enough to create the presumption if it is shown that the beneficiary had a confidential relationship with the testator and was active in connection with the preparation or the execution of the will. *Halle v. Summerfield*, 199 Tenn. at 455, 287 S.W.2d at 61. If the beneficiary's role is confined to that of a mere messenger between the testator and the testator's attorney, the presumption will not arise. *Avant v. White* (Court of Appeals, Middle Section, filed at Nashville March 29, 1974, unreported). But this rule does not apply where there has been any activity directly connected with the actual execution of the will. It is conceded by the Greens that Ben Green was present at the actual execution of the will. There is evidence that Janice Green was present, at least a part of the time, and the jury could have concluded from the evidence that she was present at the actual execution of the will. Moreover, the attorney who drafted the 1977 will was the Greens' attorney and his fee for preparing the will was paid by the Greens, and not by the testator. All of these things, combined with the "close familial relationship," which the Greens conceded existed between Janice Green and the testator, could have led the jury to determine that there was undue influence. In addition, it is possible for undue influence to exist even where the presumption is absent. The touchstone is a finding that "the free agency of the donor was destroyed and the will of the donee ... substituted therefor." *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977).

 The rules of burden of proof with regard to testamentary capacity are substantially similar to those with regard to undue influence. *See* Phillips, *Pritchard on Wills* § 144. Ordinarily, there exists a presumption of testamentary capacity once the prima facie validity of the will is shown, but the existence of suspicious circumstances, once shown by the contestant, shifts the burden to the proponent to come forward with evidence that capacity existed, whereupon the issues goes to the jury. *Burrow v. Lewis*, 24 Tenn.App. 253, 142 S.W.2d 758 (1940).

> [W]here the testator is aged, sick and infirm ... the proponent is onerated with the burden of showing that the testator comprehended the fact that he was about to execute his will and understood the contents of the paper. [No cases] hold that the burden of showing testamentary capacity rests upon proponent at any time or under any circumstances[,] [e]xcept when insanity is shown to have existed prior to the execution of the will.

*Id.* at 262, 142 S.W.2d at 763.

 The Trial Court failed to charge the jury that the burden of going forward with the evidence shifted upon a showing of the testator's infirmity or sickness, but this omission or error necessarily worked to the benefit of the Greens since it left upon the Taliaferros the full burden of showing lack of testamentary capacity by a preponderance of the evidence. There being no prejudice to the Greens, the error is harmless. TRAP Rule 36(b); T.C.A. § 27–1–117.

While the charge might have been more lucid and better organized and while the better practice in a will contest is to maintain a clear distinction between burden of proof and the burden of going forward with the evidence, the failure to do so is not, in and of itself, reversible error where, as here, the charge covers all of the material points in an accurate manner. *See Burrow v. Lewis*, 24 Tenn.App. at 262, 142 S.W.2d at 763–64 (1940).

Each of the issues raised by the Greens is without merit and, therefore, overruled.

The judgment of the Trial Court is affirmed with costs to appellants. The cause is remanded to the Trial Court for the col-

lection of costs and any other necessary proceedings.

TODD, P. J., (M. S.), and CONNER, J., concur.