# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 23, 1998

Cecil W. Crowson
Appellate Court Clerk

IN RE: BANKS DEWEY THOMPSON    )
                               )
CHRISTINE PERRY,               )
                               )        Appeal No.
    Plaintiff/Appellant,       )        01-A-01-9801-CH-00044
                               )
VS.                            )        Grundy Chancery
                               )        No. 94-612
JAMES EARL RUBLEY,             )
                               )
    Defendant/Appellee.        )


APPEALED FROM THE CHANCERY COURT OF GRUNDY COUNTY
AT ALTAMONT

THE HONORABLE JEFFREY F. STEWART, CHANCELLOR


PAUL D. CROSS
100 Highway 64 West
P. O. Box 99
Monteagle, Tennessee 37356
    Attorney for Plaintiff/Appellant

AUBREY L. HARPER
114 North College Street
P. O. Box 588
McMinnville, Tennessee 37111-0588
    Attorney for Defendant/Appellee


REVERSED AND REMANDED


BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The trial court set aside the testator's 1992 will on the ground that the sole beneficiary under that will had exerted undue influence upon the testator. We reverse, because we find that the evidence in the record preponderates against the trial court's finding of undue influence.

## I.  The Making of Two Wills

This case involves two wills executed by Banks Dewey Thompson, a resident of Grundy County who was born in 1903. After the death of his wife, Mr. Thompson executed a will which named the appellee, his nephew James Earl Rubley, as his executor and chief beneficiary. The will was dated August 8, 1984. Mr. Thompson executed a second will on May 8, 1992, which explicitly revoked all prior wills, and which named the appellant, Mrs. Christine Perry, as his executrix and sole beneficiary. The parties have stipulated that both wills were executed in accordance with the requirements of Tennessee law.

Both wills recited that Banks Thompson had no children surviving him. The proof showed that James Rubley and other family members had assisted Mr. Thompson in numerous ways for over 20 years, and that they continued to assist him as he aged, and as his physical condition declined. Mr. Rubley and his family lived in Warren County, about seven miles away from Mr. Thompson. After his wife died, Mr. Thompson signed over his life savings of about $19,000 to Mr. Rubley, in order to qualify for SSI and Medicaid benefits.

In December of 1991, Mr. Thompson was admitted to the hospital with a flu-like illness. The admitting doctor, Jim Jenkins diagnosed the illness as

septicemia, and also noted several other conditions in the elderly gentleman, including mild dementia. After a follow-up visit, Dr. Jenkins recommended that Mr. Thompson no longer drive, and that he should not be left alone. Mr. Rubley accordingly asked Christine Perry if she could provide his uncle with household help. Mrs. Perry lived just a few houses away from Mr. Thompson, and had known him and his late wife for about twenty-five years.

Mrs. Perry agreed to help Mr. Thompson. At first she declined Mr. Rubley's offer to pay for her services, but she finally agreed that Mr. Rubley could make payments to her teenage son for his school expenses. The payments, which ultimately totalled $325, were taken from the money that Mr. Thompson had turned over to his nephew.

Mrs. Perry visited Mr. Thompson twice a day, cooked and cleaned for him, kept him company, and did much to make him comfortable. Mr. Rubley and his family continued to buy groceries for the elderly widower and to deliver them to his home. They did not tell Mr. Thompson that Mrs. Perry was being paid, because they feared that he would refuse her services if he knew that any money was involved.

There was a considerable amount of testimony in the record as to a decline in Mr. Thompson's faculties after 1990, including problems with memory, vision and hearing. However his lifelong friend, Earl Creighton, testified that even after Mrs. Perry began helping him, Mr. Thompson remained active, that he continued to take care of his garden, that he built a closet in his bedroom from lumber that Mr. Creighton brought him, and that the two friends could enjoy an intelligent conversation that lasted over two hours.

At one point, Mrs. Perry drove Mr. Thompson into town so he could see his lawyer, William Davis. According to Mr. Davis' deposition testimony, he and Mr.

Thompson went to the bank to check on his account. Mr. Thompson expected there to be $19,000 in his account, and according to Mr. Davis, he was disappointed when he learned that there was no significant balance. The appellee suggests that Mr. Thompson did not remember the circumstances under which he transferred the money to his nephew, due to a faulty memory. The appellant claims that Mr. Rubley never properly accounted to Mr. Thompson for the use of his money. In any case, Mr. Thompson subsequently decided to change his will. At trial, Mrs. Perry described the circumstances under which she learned of his plans:

> Q. Whose idea was it that Mr. Thompson made a will leaving you his place?
>
> A. Mr. Thompson's idea.
>
> Q. Tell his Honor what the first you heard about that was. What was the first you knew about that?
>
> . . .
>
> A. When I was up there at his house, and I was in the kitchen and I was washing everything off in the kitchen and straightening up, he was on the porch and he came in there and told me he needed to talk to me. So I just laid my dishrag down and I dried my hands and said okay. And he said I am going to fix up a paper so you can have my place. And I told him, I said, you don't have to do that Banks. And he said hush, and went on out.

Mr. Thompson subsequently asked Mrs. Perry to drive him to town so he could see Mr. Davis again. Mrs. Perry and her husband accompanied Mr. Thompson to town, but Mr. Thompson conferred alone with Mr. Davis when the will in dispute was drafted. The following month, Mr. Davis drafted an instrument which gave Mrs. Perry a Durable Power of Attorney over Mr. Thompson's financial affairs. It is undisputed that Mrs. Perry never made use of this Power of Attorney.

## II. Conservatorship and Probate Proceedings

Shortly after the 1992 will was drafted, Mr. Rubley and his four brothers filed a petition in the Warren County Court[1], asking for the appointment of a guardian ad litem for Mr. Thompson, and the appointment of Mr. Rubley as conservator. The case was heard by the Chancery Court's Clerk and Master. On June 9, 1992 the court found that Mr. Thompson was incapable of managing his own affairs, and appointed James Rubley as his conservator and attorney Scott Horton as guardian ad litem.

In a subsequent proceeding, Mr. Thompson asked that Mr. Rubley be removed as conservator, and filed a counterclaim for the return of his $19,000. The court replaced Mr. Rubley as conservator with Mr. Horton. Because the court was concerned that Mr. Thompson may have exposed himself to liability by making a fraudulent transfer to his nephew, it declared the $19,000 to have been a gift, with a resulting trust impressed upon a portion of it for Mr. Thompson's funeral expenses.

Mr. Thompson's physical and mental condition declined, and sometime in 1994 he entered a nursing home. He died on September 7, 1994. Shortly thereafter, Mr. Rubley filed a petition for probate of Mr. Thompson's 1984 will. The petition stated that the decedent left no personal property, and indicated that the sole assets of the estate were Mr. Thompson's house, and the lot it stood upon, which the Petitioner estimated to be worth about $12,000. Mr. Rubley also stated that he had "made a thorough search for Wills signed by the Decedent other and later than the Will presented but has found no such Wills." On September 30, 1994, Mrs. Perry filed a petition for probate of the 1992 will.

---

[1]The action was brought in Warren County because Mr. Thompson had a McMinnville address, and Mr. Rubley's attorney assumed this meant he was a resident of Warren County. While we are not certain that the trial court acted properly in waiving any questions of jurisdiction and venue in order to proceed, we have not been called upon to rule on the propriety of a proceeding which is at most collateral to this appeal.

During a two-part hearing, the appellee argued that the later will was invalid, because Mr. Thompson lacked testamentary capacity at the time it was drafted, and because it was the product of undue influence on the part of Mrs. Perry. The trial court found that the appellee failed to prove that Mr. Thompson lacked testamentary capacity, but that he succeeded in proving undue influence, thereby invalidating the 1992 will. This appeal followed.

### III. Evidentiary Questions

During the trial of this case, Mr. Rubley offered documentation from the Warren County conservatorship proceedings to prove that Mr. Thompson lacked testamentary capacity. These documents included the orders of the court, the report of guardian ad litem Scott Horton, and the transcript of the proceedings. The Grundy County Court admitted these documents over the objections of Mrs. Perry's attorney, who argued that they constituted inadmissable hearsay.

We believe that under Rule 804(b) of the Tennessee Rules of Evidence, it was error to admit the transcript of the Warren County proceedings into evidence. The relevant portion of Rule 804(b) reads:

> Hearsay Exceptions.-- The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> (1) Former Testimony.-- Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

Since none of the witnesses at the conservatorship proceeding, except for Mr. Thompson, were later unavailable, as that term is defined in Rule 804(a), it follows that it was error to admit the prior testimony of any of those witnesses (except possibly for Mr. Thompson's) at the later proceeding. However after reading the transcript at issue, we find the error to be harmless, because the testimony elicited at

the conservatorship proceeding did not go to the question of Mrs. Perry's influence over Mr. Thompson, but only to his capacity to handle his own affairs.

We further note that Scott Horton testified at the trial of this case, and used his own report to refresh his memory. There was thus a possible basis for admitting the report, but again, even if it was error to admit it, it has to be considered harmless, because the report was just duplicative to Mr. Horton's testimony. For the sake of convenience, we summarize that testimony directly below.

Mr. Horton interviewed Mr. Thompson in the presence of Mrs. Perry. He found Mr. Thompson to be "healthy and in good spirits, hard of hearing and a likeable person." Mr. Thompson told Mr. Horton that James and Betty Rubley had gotten his savings account, and that he wanted to get it back. He also said that he did not need a conservator, but that if he did have someone handling his money, it should be Christine Perry. Mrs. Perry was asked if she wanted to do this, and she answered, "whatever he wants." Because of Mr. Thompson's hearing problem, he relied upon Mrs. Perry to tell Mr. Horton to speak louder, or to repeat what Mr. Horton was saying.

The final evidentiary issue involves the orders of the Warren County Court. Since those are public records, they are admissible under Rule 1005 of the Rules of Evidence, but only to the extent that they meet the requirement of relevance. We note that the Grundy County Court stated that it only admitted the orders and the transcript "because they may have some bearing on the issue of Mr. Thompson's mental capacity." They were thus admitted only for a limited purpose. The court correctly found the orders not to be res judicata for the purpose of establishing the existence of undue influence.

## IV. Undue Influence

As we stated above, the trial court found that Mr. Thompson possessed testamentary capacity at the time he executed the 1992 will, but that he was unduly influenced by Mrs. Perry, thus rendering the will invalid.

Undue influence exists where the free agency of a testator is destroyed to the extent that the will, though nominally the testator's own, is in reality that of another. *Taliaferro v. Green*, 622 S.W.2d 829 (Tenn. App. 1981). As a general rule, it is presumed that undue influence does not enter into the making of a will, and the burden of proving undue influence falls upon the person contesting the will. *Hammond v. Union Planters National Bank*, 189 Tenn. 93, 222 S.W.2d 377 (1949).

It is not unusual for a testator to change his will to benefit an individual who has helped him during his declining years. But as this court said in *Matter of Estate of DePriest,* 733 S.W.2d 74 (Tenn. App. 1986):

> "Influence arising from mere acts of kindness, attention, and congenial intercourse which operate to secure or retain the affection, esteem, or good will of the testator, and induce him to make the persons performing such kindly offices beneficiaries in his will, do not constitute undue influence, unless such acts are carried out with the purpose and design of subjecting the mind of the testator to the influence and the direction of the person exercising the influence, and thus deprive the testator of his free will, free act, and free agency."

733 S.W.2d at 78.

There is no testimony in the record to indicate that Mrs. Perry acted with the design of substituting her will for that of Mr. Thompson, or that she encouraged him in any way to name her as his beneficiary. It seems clear that Mr. Thompson's decision was induced in part by his resentment over Mr. Rubley's handling of his bank account, and in part by a belief that Mrs. Perry was acting purely as a good Samaritan. However there is no proof that Mrs. Perry ever criticized Mr. Rubley, or that she did anything to fuel Mr. Thompson's resentment of his nephew. Further, Mrs. Perry was only following Mr. Rubley's instructions by not disclosing her financial arrangements with him to Mr. Thompson.

Because of the complete lack of evidence of undue influence in the record, we must conclude that the trial court relied upon the court orders from Warren County to reach its conclusion, despite its statement that those orders were being admitted solely for the purpose of shedding light on Mr. Thompson's mental capacity. The Warren County Court's order of June 9, 1992 reads in part:

> IT IS FURTHER ORDERED that the Court finds that at the present time Christine Perry is being paid by the members of Banks Thompson's family to look after and care for him, to cook meals for him, and check on him as to his welfare and safety, and the Court finds that upon the report of the Guardian Ad Litem, that Banks Thompson thinks that said lady, Christine Perry, is, in fact, acting out of the goodness of her heart as a neighbor, not realizing that she is a paid employee, and the Court therefore finds that Christine Perry is in a fiduciary relationship with Banks Thompson, and that she is abusing her fiduciary relationship by influencing Banks Thompson in the possibility that he may have approximately six months ago, according to the finding of the Guardian Ad Litem, executed a Will which may, in fact, not be a valid Will due to the findings of this Court that, at that time, Banks Thompson was not well.

Putting aside the obvious question of why the Clerk and Master chose to render an advisory opinion on a matter beyond its subject matter jurisdiction, we must state that the above-quoted language was entitled to little or no weight at trial, because it is at best unsolicited opinion evidence and at worst inadmissable hearsay. We conclude that the evidence preponderates against the findings of the trial court. See Rule 13(d) Tenn. R. App. Proc.

The appellee claims, however, that the reasoning of the trial court is sound, and that Mrs. Perry should be considered to have been in a confidential relationship with the testator. Such a relationship can create a presumption of undue influence, where a party to that relationship is named as the sole beneficiary of the other party's will. *Richmond v. Christian*, 555 S.W.2d 105 (Tenn. 1977). When a confidential relationship is proven to exist, the burden of proof is said to shift to the beneficiary to rebut the presumption. *Parham v. Walker*, 568 S.W.2d 622 (Tenn. App. 1978).

While confidential relationships include certain well-recognized legal relationships such as attorney and client, conservator and ward, and principal and agent, the term also includes less well-defined relationships where one party reposes confidence in another, and acts in reliance upon the other's representations. So far as Mr. Thompson's financial affairs went, there appears to be no evidence of a confidential relationship with Mrs. Perry. She seems to have acted only as Mr. Thompson's friend and as his housekeeper, not as his financial advisor or his banker.

We further note that in *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. App. 1989), this court stated that a confidential relationship is not merely one of mutual trust and confidence, but one

> "where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party."

Even if we concede, for the sake of argument that the relationship between Mrs. Perry and Mr. Thompson meets the above definition, we note that many of our cases indicate that proof of a confidential relationship alone will not support a finding of undue influence, unless accompanied by proof of other suspicious circumstances indicative of such influence. *Vantrease v. Carl*, 410 S.W.2d 629, 632 (Tenn. App. 1966); *Taliaferro v. Green*, 622 S.W.2d 829, 836 (Tenn. App. 1981).

The trial court relied upon language found in the case of *In Re Estate of Elam*, 738 S.W.2d 169 (Tenn. 1987) as the basis for its presumption that Mrs. Perry exerted undue influence upon the mind of the testator:

> "In order for such a presumption to arise there must be a showing that there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud and duress was involved, or other conditions which would tend to establish that the free agency

- 10 -

> of the donor was destroyed and the will of the donee was substituted therefor."

738 S.W.2d at 173, quoting *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977).

While there was proof in the record that Mr. Thompson had already suffered some physical and mental deterioration at the time of the will's execution, we do not believe that this fact is sufficient by itself to create a presumption of undue influence, without some proof that Mr. Thompson's infirmity created such a dependence upon Mrs. Perry as to destroy his free will. See *Williamson v. Upchurch*, 768 S.W.2d 265 (Tenn. App. 1988).

The record showed to the contrary that Mr. Thompson relied upon both Mrs. Perry and Mr. Rubley for many of his physical needs, but was apparently independent enough to live on his own, to do some of his own cooking, to mow his yard, and to build a closet in his house. Despite the important role she played in Mr. Thompson's daily life from 1992 on, there was no evidence that Mr. Thompson's decision to make her his beneficiary was the product of anyone's will other than his own. Indeed, it appears that Mr. Thompson was a person of strong will, who would not tolerate attempts by others to make decisions for him.

The appellee argues that a confidential relationship and undue influence can be inferred from Mrs. Perry's role in driving Mr. Thompson to his lawyer's office on the day he executed his will, and from the fact that he subsequently granted her a power of attorney. But such acts are not sufficient to establish a confidential relationship, because they fall far short of indicating that Mrs. Perry was active in connection with the preparation or the execution or the will, or that she sought in any way the power of attorney that was granted to her. See *Taliaferro v. Green*, 622 S.W.2d 829, 836 (Tenn. App. 1981); *Vantrease v. Carl,* 410 S.W.2d 636 (Tenn. App. 1966).

## V.

The judgment of the trial court is reversed. Remand this cause to the Chancery Court of Grundy County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE