IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 7, 2003 Session

## IN RE: THE ESTATE OF SPENCER BROWN

**Appeal from the Circuit Court for Dickson County**
**No. CV1290      Allen W. Wallace, Circuit Judge**

_____

**No. M2002-00141-COA-R3-CV - Filed July 24, 2003**
_____

This is a lawsuit filed by Don M. Brown ("Mr. Brown" or "the Appellant") against Allene Dunnagan ("Ms. Dunnagan" or "the Appellee") to set aside Spencer Brown's Last Will and Testament dated February 11, 2000. Mr. Spencer Brown died on February 21, 2000. Mr. Brown alleged that Ms. Dunnagan had used undue influence to get Spencer Brown to change his 1994 will. The Dickson County Circuit Court granted the Appellee's Motion for Directed Verdict and dismissed the Appellant's complaint. The Appellant appealed this decision. We reverse the decision of the trial court and remand for further proceedings.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Cause Remanded to the Circuit Court for Dickson County**

W. FRANK BROWN, III, Sp. J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Connie Reguli, Nashville, Tennessee, for the Appellant Don M. Brown

Ernest W. Williams and Anna E. Freeman, Franklin, Tennessee, for the Appellee Allene Dunnagan

## OPINION

## I. THE LEGAL ISSUES

There are two basic issues in this appeal. The first involves the interpretation of Rule 24 of the Tennessee Rules of Appellate Procedure. The Appellant provided an abridged transcript in support of his position that the case should have been decided by the jury. The Appellee did not supplement the record but claimed that the Appellant failed to meet his duty to file a complete record. Second, the Appellant contends that the trial court erred by directing a verdict for the Defendant instead of submitting the issue of undue influence to the jury.

## II.  STANDARD OF REVIEW

Appellate review of non-jury cases is de novo upon the record, accompanied by a presumption of correctness, unless the evidence preponderates against the trial court's factual findings.  *See* Tenn. R.App. P. 13(d).  Conclusions of law, however, are reviewed under a pure de novo standard, according no deference to the conclusions of law made by the lower courts. *See Bank/First Citizens Bank v. Citizens & Assocs.*, 82 S.W.3d 259, 262 (Tenn. 2002).

## III.  FACTUAL DISCUSSION

Mr. Spencer Brown was born on December 12, 1906.  He was a widower and had no children.  He lived on a farm in Dickson County, Tennessee for most of his life.  Spencer Brown had inherited one hundred ninety-three (193) acres from his mother.  Spencer Brown and his brother, Ezell Brown, owned an adjoining seventy (70) acres as tenants in common.  Ezell Brown died intestate in 1955.  Ezell Brown was survived by five (5) children.

Two of Ezell's five (5) children were Don Brown and Alton Brown.  From 1965 forward Mr. Don Brown had helped his uncle, Spencer Brown, with farm chores.  In 1987 Spencer Brown devised a plan whereby Don and Alton Brown could purchase his farm for $60,000.00. This money would be divided among the remaining heirs of Ezell Brown.  On July 1, 1994 Spencer Brown executed a will that carried out those intentions.

The will was actually signed by Spencer Brown <u>after</u> he had a heart attack earlier in 1994.  As a result of his condition, Spencer Brown was not able to return to his home on the farm.  Instead he went to live with his sister, Ms. Dunnagan.  During the period 1994 until his death on February 21, 2000, Spencer Brown's health deteriorated.  Even though she had no formal power of attorney, Ms. Dunnagan over time wrote his checks and handled all of his financial affairs.  Spencer Brown paid his sister $300.00 per month and gave her $5,000.00 to purchase a car.  She also obtained $30,000.00 from certificates of deposit that had been created in the names of Spencer Brown or Allene Dunnagan during the time Spencer Brown lived with his sister.  These monies came from Spencer Brown's funds.

Spencer Brown became ill on December 2, 1999.  His condition became progressively worse until his death on February 21, 2000.  Mrs. Dunnagan handled many of her brother's affairs during this period.  Spencer Brown had around-the-clock sitters with him after he returned to his sister's house from the hospital.  Hospice began providing care for Spencer Brown.

There were expressions by Spencer Brown and Ms. Dunnagan about the last will and testament of Spencer Brown.  On some occasions Spencer Brown, and on some occasions both of them, mentioned a need to change the will.  On February 9, 2000 attorney Jerry Smith came to see Spencer Brown at the request of Ms. Dunnagan.  Spencer Brown made a number of statements about his nephews, Don and Alton Brown, and their intentions for the farm.  On that same day Spencer Brown told Mr. Smith that he wanted to leave his share of the property he had owned with Ezell Brown to Ezell's five children.  He wanted some time to think about other issues.

2

On February 10, 2000 Spencer Brown was visited for a second time by Attorney Smith. Spencer Brown had decided to leave 50% of his estate, including his farm, to Ms. Dunnagan. Seven nieces and nephews would get the remainder of the estate. On February 11, 2000 Mr. Smith brought the will to Spencer Brown to sign. Spencer Brown requested a change. Mr. Smith returned to his office to make the change. Upon Mr. Smith's return to Ms. Dunnagan's house, Spencer Brown signed the new will. This new will was kept a secret from the other family members until after Spencer Brown's death.

Don Brown filed a Complaint contesting the validity of the February 11, 2000 will on the basis of undue influence by Ms. Dunnagan. Although Don Brown initially filed also on his uncle's lack of testamentary capacity, this claim was dismissed by Don Brown shortly before trial. The case went to trial on November 19, 2000 before a jury. The trial court denied the Appellee's Motion for a Directed Verdict at the end of the Appellant's proof. However, at the end of the Appellee's proof, the trial court granted the Appellee's renewed or second Motion for Directed Verdict. This appeal followed.

## IV. <u>LEGAL</u> <u>ANALYSIS</u>

### A. <u>The</u> <u>Record</u> <u>Issue</u>.

On appeal the Appellant presented a partial record. The Appellee has requested that this appeal be dismissed and the trial court affirmed because Mr. Brown did not file a complete record. The Tennessee Supreme Court set out an appellate court's role when reviewing a trial court's decision regarding a motion for directed verdict as follows:

> In reviewing a trial court's action on a motion for a directed verdict, it is an appellate court's duty to look at all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences to that party, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence.

*Goode v. Tamko Asphalt Products, Inc.*, 783 S.W.2d 184, 187 (Tenn. 1989)(citing *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980).

We begin the analysis by examining T.R.A.P. 24 and the cases citing the general rule. Rule 24(a) describes what is, or should be, the record on appeal and what is not. The last paragraph of Rule 24(a) provides as follows:

> If less than the full record on appeal as defined in this subdivision is deemed sufficient to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal or if a party wishes to include any papers specifically excluded in this subdivision, the party shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the

3

record the appellant intends to include on appeal, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee deems any other parts of the record to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. All parts of the record described or designated by the parties shall be included by the clerk of the trial court as the record on appeal. The declaration and description of the parts of the record to be included on appeal provided in this subdivision may be filed and served with the declaration and description of the parts of the transcript to be included in the record provided in subdivision (b) of this rule. If a party wishes to include any papers specifically excluded in this subdivision, but fails to timely designate such items, the trial court clerk may supplement the record as provided for in subdivision (e) without modifying the previously prepared record.

T.R.A.P. 24(b) relates to the transcript of the proceedings. It is very similar to 24(a). Rule 24(b) provides in relevant part:

Transcript of Stenographic or Other Substantially Verbatim Recording of Evidence or Proceedings. – If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. Unless the entire transcript is to be included, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee deems a transcript of other parts of the proceedings to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. The appellant shall either have the additional parts prepared at the appellant's own expense or apply to the trial court for an order requiring the appellee to do so. The transcript, certified by the appellant, appellant's counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 90 days after filing the notice of appeal.

The record in this case includes the Technical Record, which is identified as Volume I. The Notice of Appeal [p.28] and Appeal Bond [p.29] were filed with the trial court on January

14, 2002. On January 25, 2002 the Appellant filed with the Trial Clerk his "Notice of Submission of Partial Record." The Appellant listed seven (7) items, including the Notice, that were to be a part of the Technical Record. The Appellant also listed that he would submit the transcript of the testimony of eleven (11) named witnesses, all trial exhibits, the "Judge's discourse with attorney's [sic] regarding requests for jury instructions," "Motion for Directed Verdict at the close of plaintiff's proof and at the close of defendant's proof," and the judge's ruling.

The record in this case does not indicate that the Appellee requested that (a) any additional documents be added to the technical record or (b) the transcript of any other evidence or proceedings be typed or filed as part of the record. Indeed at oral argument counsel for the Appellee argued that the appeal should be dismissed because the Appellant had not filed the complete record.

The issue was stated clearly in *State v. Banes*, 874 S.W.2d 73 (Tenn.Crim.App.1993), *perm. app. denied* (Tenn. 1994):

> It is the appellant's obligation to have prepared an adequate record in order to allow meaningful review on appeal. Tenn.R.App.P. 24(b); *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn.1983); *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1988). An appellate court cannot consider an issue which is not preserved in the record for review. *Id.*

*Banes*, 874 S.W.2d at 82.

An analysis of the cases shows that the general rule is used where there is no record to consider the issue presented. Usually, there is no transcript. Sometimes, part or all of the technical record has not even been filed. Such is not the case presented here. We have an abridged record.

The Rule does not require that everything or every word of a transcript become part of the record. If such were the law, the drafters would have merely provided such. Instead, the Rule provides that the appellant must designate those portions of the record, including the transcript, that is necessary to consider and decide the issues raised on appeal by the appellant. The Appellant has done so in this cause. The Rule goes further and provides that the appellee can add to the record if he/she is of the opinion that the record is insufficient. The Appellee did not pursue such in this case. Thus, we must look at the record before us and determine if the partial record is sufficient for us to rule on the issues presented by the Appellant on appeal.

The question becomes what issues does the Appellant raise and is the record submitted by the Appellant sufficient or adequate for the appellate court to make a decision on the issues presented. As required by T.R.A.P. Rule 24, the Appellant set forth two issues in his "Notice of Submission of Partial Record." Those issues are:

> 1. Whether the trial court erred in not allowing the plaintiff to implead other beneficiaries as parties.

5

2.  Whether the trial court erred in directing a verdict against the plaintiff.

The Technical Record includes as number 3 the Plaintiff's Motion to Implead Parties and Amend the Petition.  Item 4 is the trial court's order denying the Motion.  Thus, it would appear that the record is sufficient to decide the first issue.  The Record indicates that Mr. Brown filed the Motion to Amend on October 12, 2001 and argued that Motion along with a Motion to Continue.  The Order denying these Motions was filed on November 14, 2001.  It appears that the trial court wanted to try the case on November 19, 2001 as scheduled.

With regard to the second issue, the Appellant has produced the testimony of eleven (11) witnesses.  The Appellee did not seek to supplement the record to add additional transcript material.  Counsel for the defendant/Appellee just cites the general rule to support his argument.  Other than the deposition of Jerry Smith, mentioned at oral argument, counsel does not tell us what evidence was not included in the record and how this omitted material was the death knell of Appellant's case.  Without seeking to supplement the record or informing the court what the omitted material is, we can only assume the record on appeal is sufficient to address the second issue.

For the reasons stated above, we find that the record as presented on appeal is sufficient for us to review the trial court's decision.

## B.  **The** **Burden** **of** **Proof** **Issue.**

A will contest can be a very complicated cause to try.  A summary of the law is helpful.

> In a will contest, the proponents of a will have the initial burden of proving that the will was executed in compliance with all legal formalities.  Proof of due execution makes out a prima facie case for the will's validity because it gives rise to the presumption that the testator was capable of making a will. Thus, proof of due execution shifts the burden to the contestants to prove that the testator was unduly influenced in making his or her will.
>
> . . . Accordingly, in most cases, those challenging the validity of a will on the ground that it was procured by undue influence must prove the existence of suspicious circumstances warranting the conclusion that the person allegedly influenced did not act freely and independently. . . .
>
> . . .The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary, (2) the testator's physical or mental deterioration, and (3) the beneficiary's active involvement in procuring the will.  Other circumstances include:  (1) secrecy concerning the will's existence, (2) the unjust or unnatural nature of the will's terms, (3)

6

discrepancies between the will and the testator's expressed intentions, and (4) fraud or duress directed toward the testator.

Proof of the existence of a confidential relationship, by itself, will not be sufficient to invalidate a will. It is not the relationship that concerns the courts but rather the abuse of the relationship. Proof of the existence of a confidential relationship must be coupled with evidence of one or more other suspicious circumstances that give rise to a presumption of undue influence. Accordingly, proof that a beneficiary had a confidential relationship, such as an unrestricted power of attorney, coupled with evidence of a transaction or gift to the beneficiary creates a presumption of undue influence.

Once a contestant presents sufficient evidence to substantiate its undue influence claim, the burden of going forward shifts back to the will's proponent to prove by clear and convincing evidence that the challenged transaction or gift was fair. . . . Frequently, a will's proponents prove the fairness of a transaction by presenting evidence that the testator received independent advice. However, proof of independent advice becomes necessary only when it would be difficult to show the fairness of the transaction or the competency of the testator without it.

*In re Estate of Maddox*, 60 S.W.3d 84, 88-89 (Tenn. Ct. App.)(citations omitted), *perm. app. denied* (2001).

The same background was given by Judge Koch in *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn.Ct.App.), *perm. app. denied* (1989):

Invalidating a will because of undue influence is generally not a simple undertaking. While undue influence can be proved either by direct or by circumstantial evidence, *In re Depriest's Estate,* 733 S.W.2d 74, 78 (Tenn.Ct.App.1986) (direct evidence); *Patton v. Allison,* 26 Tenn. (7 Humph.) 320, 333 (1846) (circumstantial evidence), direct evidence is rarely available. *Hager v. Hager,* 17 Tenn.App. 143, 161, 66 S.W.2d 250, 260 (1933). Thus, in most cases, the contestants establish undue influence by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act. *Taliaferro v. Green,* 622 S.W.2d 829, 835-36 (Tenn.Ct.App.1981).

Judge Koch went on to point out some of these "suspicious circumstances" which can be considered as evidence of undue influence. He said:

The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential

7

relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; (3) the beneficiary's active involvement in procuring the will. *See In re Elam's Estate,* 738 S.W.2d 169, 173 (Tenn.1987); *Kelly v. Allen,* 558 S.W.2d 845, 848 (Tenn.1977); *Taliaferro v. Green,* 622 S.W.2d at 835-36.

Other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator. *See Halle v. Summerfield,* 199 Tenn. at 454-57, 287 S.W.2d at 61-62; *American Trust & Banking Co. v. Williams,* 32 Tenn.App. 592, 606-07, 225 S.W.2d 79, 85 (1948); *see also* 1 *Pritchard on the Law of Wills and Administration of Estates* § 145 (4th ed. 1983); 25 *Tenn.Jur.* Wills § 24 (1985); Tennessee Pattern Instructions--Civil § 11.59.

*Id.*

In this case the Appellant dropped his challenge to the testamentary capacity of Spencer Brown to execute a new will. Therefore, the will was presumed valid and Mr. Brown had to prove "suspicious circumstances warranting the conclusion that the person allegedly influenced did not act freely and independently. . . ." *Estate of Maddox*, 60 S.W.3d at 88.

It is the Appellant's position that he proved sufficient suspicious circumstances that it was necessary to submit this case to the jury. We agree. First, under the facts of this case, it appears that the defendant/Appellee had a confidential relationship with her brother, the decedent. A similar case to this one is *Smith v. Smith*, 102 S.W.3d 648 (Tenn. Ct. App. 2002), *perm. app. denied* (2003). In *Smith*, the Court of Appeals, Eastern Section, overruled the trial court and found a confidential relationship to have existed where a person performed services as an attorney in fact even though the power of attorney was not legally effective. Second, the record before us contains much evidence of Spencer Brown's physical deterioration. Third, there is evidence that could lead a jury to conclude that Ms. Dunnagan was active in the procurement of Spencer Brown's "last" will. Fourth, there was secrecy regarding the new will. Fifth, some of Spencer Brown's statements about Don Brown do not appear to be based in fact. Where did the decedent get his "misinformation about Don Brown?" Sixth, the terms of the will changed so as to benefit Ms. Dunnagan and adversely affected the Appellant and his brother regarding the farmland. The terms of the new will certainly changed Spencer Brown's long-standing position regarding the disposition of the farm. On the other hand, it would be natural that Spencer Brown would want to assist the one [Ms. Dunnagan] who had taken care of him during his last years. This aspect makes it necessary for the jury to consider the certificates of deposits and other assets Ms. Dunnagan received as a result of her brother's gifts and death.

As Judge Koch said recently in *Kelley v. Johns*, 96 S.W.3d 189 (Tenn. Ct. App.), *perm. app. denied* (2002).

8

We need only consider here the challenge to the evidentiary foundation of the jury's verdict because the outcome of that issue necessarily dictates the fate of the estate's directed verdict claim. Directed verdicts cannot be granted unless the evidence permits reasonable minds to reach but one conclusion. *Childress v. Currie,* 74 S.W.3d 324, 328 (Tenn. 2002); *Conatser v. Clarksville Coca-Cola Bottling Co.,* 920 S.W.2d 646, 647 (Tenn.1995); *Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn.1994). If there is material evidence to support a jury's verdict, then, of necessity, granting a directed verdict for the losing party would have been improper because the evidence permitted reasonable minds to reach more than one conclusion. *Alexander v. Armentrout,* 24 S.W.3d 267, 271 (Tenn.2000).

*Kelley*, 96 S.W.3d at 194.

Under the circumstances of the eleven (11) witnesses presented in the record and the failure of the Appellee to show otherwise, we agree with the Appellant that the trial judge erred in directing a verdict for Ms. Dunnagan. On this record we hold that there was more than one possible conclusion that could be reached under the facts presented in the record before us. Will contest cases are so factually specific that they are often uniquely qualified for a jury's determination. Therefore, the case should have been submitted to the jury for decision.

## IV.  <u>CONCLUSION</u>

We reverse the trial court's directing a verdict for the defendant.  We remand the case for a new trial.  The trial court shall consider, if presented again, the Appellant's Motion to Amend and to Implead additional interested parties in accordance with applicable law.

_____
W. FRANK BROWN, III, SPECIAL JUDGE