In the Matter of ESTATE OF Winnie Elizabeth DEPRIEST, Deceased.

Anthony M. CANNON, Executor of the Estate of Virgie Dixon, Deceased, Plaintiff-Appellee,

v.

Dorothy Dean Wisdom ALLEN, Defendant-Appellant,

and

First American National Bank, Defendant.

Court of Appeals of Tennessee, Middle Section.

Aug. 13, 1986.

Permission to Appeal Denied by Supreme Court June 8, 1987.

Margaret J. Heath, Cosner & Waldschmidt, Nashville, Tenn., for plaintiff-appellee.

Thomas A. Travaglini, Madison, Tenn., for defendant-appellant.

## OPINION

CANTRELL, Judge.

This is a will contest. The jury found that a 1982 will was procured by the undue influence of the proponent-appellant, Dorothy Dean Wisdom Allen. The appellant complains that the trial judge's charge to the jury was erroneous, that the charge was not in writing, that the trial judge gave a supplemental charge to the jury without the attorneys being present, and that the trial judge erred in allowing into evidence incompetent and immaterial testimony.

Mrs. Elizabeth Depriest lived in McKendree Manor, a rest home located in Nashville. She did not enjoy living there but her one living sister and two half brothers would not take her in. Mrs. Depriest perceived that Mr. Cannon, the husband of the deceased sister, was responsible for her living sister's refusal to allow Mrs. Depriest to live with her.

The appellant, Mrs. Allen, worked at McKendree Manor as a housekeeper. She became friends with Mrs. Depriest and for several months she and Mrs. Depriest discussed the possibility of Mrs. Depriest leaving the rest home and going to live with Mrs. Allen. Mrs. Allen had some physical ailments that were aggravated by the work that she was required to do at the rest home. So, in April of 1982 she finally decided to quit work and take Mrs. Depriest to live with her and her husband.

Mrs. Depriest paid Mrs. Allen $600 per month for expenses; she also bought Mrs. Allen some new appliances and contributed a substantial amount of money toward remodeling Mrs. Allen's home.

In May of 1982, Mrs. Depriest and Mrs. Allen made separate wills. They had discussed the possibility that at the death of either one of them there would be no assurance to the other that their understandings regarding Mrs. Depriest's care would be carried out. Therefore, Mrs. Allen contacted an attorney and had him prepare a will for each of them. Mrs. Depriest's will left all her property to Mrs. Allen and reflects that Mrs. Allen or her daughter would furnish Mrs. Depriest a home and provide for her needs and expenses exclusive of her medical expenses.

Mrs. Allen's will reflected that she agreed to furnish Mrs. Depriest a home and care for her for $600 per month. The will further "gave and bequeathed" to Mrs. Depriest a place to live in Mrs. Allen's

home and recited that Mrs. Allen's daughter was bound to keep the agreement if Mrs. Allen died before Mrs. Depriest. Mrs. Allen's will, however, left all her property to her husband and her daughter.

Mrs. Depriest died in September of 1982. The 1982 will was presented for probate by Mrs. Allen. A 1978 will leaving all Mrs. Depriest's property to her sister, Virgie Dixon, was also presented for probate. Mrs. Dixon filed a petition devisavit vel non alleging that the 1982 will was invalid because (1) Mrs. Depriest was not mentally competent to make a will in May of 1982, (2) the 1982 will was procured by the undue influence of Mrs. Allen, and (3) that the 1982 will was procured by fraud.

The probate judge transferred the cause to the circuit court for trial of the issue devisavit vel non. Mrs. Allen filed an answer denying the material allegations of the petition.

After a trial before a jury, the trial judge submitted certain specific issues to be answered by the jury. After deliberating for a short period of time, the jury asked for some further instructions on the question of undue influence. When the jury returned to the courtroom the attorney for Mrs. Allen was not present. Rather than waiting for him to arrive, the trial judge asked the parties and the attorney for Mrs. Dixon to also leave the courtroom. The trial judge then read a definition of undue influence and answered several questions posed by the jurors.

The jury returned to its deliberations and finally returned a verdict holding that there was a confidential relationship between Mrs. Depriest and Mrs. Allen and that the 1982 will was procured by Mrs. Allen's undue influence. They further found that Mrs. Depriest did not receive any independent advice when she executed the 1982 will. The trial judge then entered an order holding the 1982 will invalid and ordering the 1978 will admitted to probate.

## I. THE SUPPLEMENTAL CHARGE

The appellant asserts that the supplemental charge given by the trial judge without counsel being present was per se reversible; that is, reversible regardless of the correctness of the instructions or whether prejudice resulted from the judge's action. That assertion is based on an unreported decision of this court, *McBride v. Allen* (filed in Nashville, December 20, 1979), in which we held that it was per se reversible for the trial judge to address the jury in the jury room without counsel for both sides being present. Adopting the views expressed by courts from other jurisdictions, this Court said:

"We cannot inquire, in such a case, what instructions were given by the court to the jury—whether they were correct or incorrect, prejudicial or otherwise ... The only safe course therefore, when it is established that the court, without some overruling necessity therefore, (sic) gave instructions to the jury ... in the absence of the complaining suitors counsel, engaged in representing him on the trial, and without reasonable notice to them and an opportunity to be present, is to withhold all inquiry and investigation into the correctness of the instructions or action of the court, and treat them as conclusively prejudicial by reason of the suitors deprivation of his constitutional right."

The facts in that case were, of course, different and more extreme from the facts here where the jury returned to open court and all the subsequent communications between the trial judge and the jury are on the record. In *Wade v. Ordway*, 60 Tenn. 229 (1872), our Supreme Court decided a case on substantially the same facts that we have here and held that the action of the trial judge did not require reversal. The court said:

"While it is certainly a sound rule, and one that ought not to be departed from, that the counsel engaged in a case should be present when the Court gives his instructions to the jury as to law of the case, yet this sound rule must not be pushed to the extent that a slight departure from it shall be held sufficient to put the inferior Court in error, and reverse the case. The principle on which the rule stands is, that the parties liti-

gant may hear the law as given by the Judge to the jury, may thereby be prepared to except, in case it is deemed erroneous, or to ask for such qualification of the instruction as may be thought proper or such additional instructions as the facts of the case may warrant. To hold that when the Court merely answers a question, giving the same instructions substantially as he had given in his original charge, and stating a rule to the jury to which no exception can fairly be taken, that an error has been committed for which this Court should reverse, would be to uphold the letter of the rule of practice, but to disregard its spirit and principle.

We hold, therefore, that where we can see clearly, as in this case, that no injury has been done to the party by the instruction given, in a case of such slight departure from propriety as we find here, that this Court cannot reverse for such action.

\* \* \* \* \* \*

We see in this record what was done and said, from the statement of the Judge himself, which we must take as the most trustworthy information to be had, on the general principle, that every presumption is in favor of the integrity and uprightness of a high judicial officer, acting under the weighty sanctions of his high position."

This Court followed the same rule in *Getz v. Weiss,* 25 Tenn.App. 520, 160 S.W.2d 438 (1941), although holding that the case should be reversed because the trial judge's supplemental instructions were erroneous.

▪ We think these cases establish the rule that instructing the jury outside the presence of counsel where the supplemental instructions are given in open court and all the supplemental proceedings are on the record is not per se reversible. Reversal may, of course, be compelled where the circumstances show that one of the parties was otherwise prejudiced by the court's action, or where the supplemental instructions were erroneous. In that case Rule 51.02 of the Tennessee Rules of Civil Procedure preserves the parties' right to object.

## II. WAS THERE ERROR BECAUSE THE CHARGE WAS NOT IN WRITING?

T.C.A. § 20–9–501 requires that at the request of either party the trial judge shall reduce his charge to writing before it is delivered to the jury. The same statute also requires that any supplemental instructions which may be asked for by the jury shall in like manner be reduced to writing before being delivered.

The appellant asserts that this case should be reversed because the trial judge did not comply with that statute either in his original charge or in his supplemental charge.

With respect to the original charge, there is no showing in the record of a request by either party that the trial judge reduce his charge to writing. Nor does it appear that the charge was not in writing. The transcript reflects the following exchange at the end of the original charge:

"MR. TRAVAGLINI (Mrs. Allen's counsel): I just want to be sure the ones that were read will be passed back to the jury along with the rest of the instructions. THE COURT: No. I will overrule that because some I read out of a book and some by written handwriting.

Okay, you may now be excused.

\* \* \* \* \* \*

MR. TRAVAGLINI: Just for clarification, you are not sending any of the jury instructions back?

THE COURT: No."

▪ All this exchange shows is the question of whether the charge is to be sent out with the jury. The statute does not require that the written charge be physically delivered to the jury. *Phillips v. Newport,* 28 Tenn.App. 187, 187 S.W.2d 965 (1945).

▪ With respect to the supplemental instructions, the record shows that when the jury returned to the courtroom the trial judge restated a question they had asked and then read a supplemental instruction

on undue influence from a prepared text. At the end of the reading, the jurors asked some other questions and the trial judge replied.

We do not think that the record shows any error in this case. A trial judge responding to the questions from individual jurors could hardly be expected to take down the questions, write out his answers, and then read his answers back to the jury.

## III. THE SUBSTANCE OF THE CHARGE

Beyond all else, the appellant asserts that the supplemental charge was erroneous because it led the jury to believe that they could find Mrs. Allen procured the execution of Mrs. Depriest's will by undue influence even though she did not intentionally do so.

We have examined the original charge, the supplemental charge, and the special interrogatories submitted to the jury. We have concluded that (1) the supplemental charge was erroneous with respect to the question of undue influence that is shown by direct proof, and (2) with respect to undue influence that may be presumed from a confidential relationship, the answers to the special interrogatories submitted to the jury do not show the invalidity of the will.

■ Undue influence invalidating a will must be such as destroys the free agency of the testator to the extent that the will, though nominally his or her own, is in reality that of another. *Cude v. Culbertson*, 30 Tenn.App. 628, 209 S.W.2d 506 (1947). Undue influence may be proved directly by testimony showing that one person, by threats or coercion or importunities, so exhausted the will of the other person to resist that the act taken by the weaker was not his or her own act but that of the person exercising the undue influence.

The trial judge told the jury in his supplemental instructions that they should look to the effect of Mrs. Allen's actions not to her motive; that it was not important what was in the mind of the person who exercised the influence but what effect it had on the person making the will. The appellant argues that undue influence must result from an *intent* to set aside the free will of another and to induce that person to do an act he or she would not have done if left to act freely.

■ There are two factors involved in the discussion between the trial judge and the jurors. The first is motive. And the trial judge was correct in saying to the jurors that the motive of the person wielding influence over the other has no bearing on the question of undue influence. Undue influence may result from good motives and the object sought by the influence of one over another may be the result of a lofty purpose. *See* 79 Am.Jur.2d, *Wills*, § 395. But undue influence does require a specific intent to subject the mind of the testator to the influence and direction of the person exercising the influence. We think this excerpt from 94 C.J.S., *Wills*, § 277, properly draws the distinction:

"Influence arising from mere acts of kindness, attention, and congenial intercourse which operate to secure or retain the affection, esteem, or good will of the testator, and induce him to make the persons performing such kindly offices beneficiaries in his will, do not constitute undue influence, unless such acts are carried out with the purpose and design of subjecting the mind of the testator to the influence and the direction of the person exercising the influence, and thus deprive the testator of his free will, free act, and free agency."

■ Therefore, we conclude that with respect to undue influence shown by direct proof without the aid of the presumption discussed below, the proof must show an intent by the dominant person to impose his or her will on the person being influenced. Because the trial judge's supplemental instructions leave the jury with the impression that such undue influence may be found without such intent we think the instructions were erroneous.

■ Undue influence may also be presumed from a confidential relationship. *Richmond v. Christian*, 555 S.W.2d 105 (Tenn. 1977). The presumption is rebut-

table by clear and convincing evidence of the *fairness of the transactions. Id.* A showing that the testator had independent advice is one way of showing the fairness of the transaction and a showing of independent advice is ordinarily required where it is a reasonable requirement and where it would be difficult to show the fairness of the transaction without it. *Id.* at 108.

In this case, the trial judge submitted a set of special interrogatories to the jury. Numbers 4 and 4a were as follows:

"4. Did Mrs. Depriest receive any independent advice or counsel when she executed the document entitled 'Last Will and Testament,' and dated May 26, 1982? 4a. Was the execution of the instrument dated May 26, 1982 fair under the circumstances?"

The jury answered "no" to both. However, we do not think these answers compel the conclusion that the will was procured by undue influence. In *Richmond v. Christian,* the Supreme Court said the presumption of invalidity may be overcome by showing the *fairness of the transaction.* The fairness may be shown by independent advice or by other means. The jury answered that the testator did not have independent advice, but we think the answer to interrogatory No. 4a—whether the *execution of the instrument* was fair under the circumstances—is irrelevant to this case. Thus, a key part of the case is missing; that is, whether the proponent of the will has shown the fairness of the transaction by proof other than proof of independent advice.

 It is understandable that judges and lawyers might be confused in this area because the appellate courts have not carefully defined what is meant by the *fairness of the transaction.* Without the term being carefully defined the average jury might assume that it was being asked to find whether the person benefitting from the will deserved what the will provided. That is not the meaning of the term. The jury should not be concerned with the question of whether the testator did right by those who ordinarily would be the objects of the testator's bounty. The jury's function is limited to a determination of the testator's capacity to make a will and whether the provisions in the will were arrived at through the free agency of the testator rather than through the imposition of someone else's will. If the jury finds in favor of the will on these two questions it has found that the transaction was fair.

We conclude, therefore, that the jury's verdict does not show the invalidity of the will because of the confidential relationship between the appellant and Mrs. Depriest.

The appellant also raises an issue about the action of the trial judge in refusing to tax her attorney's fees to the estate. This is a matter that addresses itself to the discretion of the trial judge. *Goodall v. Crawford,* 611 S.W.2d 602 (Tenn.App.1980). Since the cause must be remanded, the question should be reserved for further action in the court below.

The judgment of the court below, based on the jury's verdict, is reversed and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee.

TODD, P.J. (M.S.), and KOCH, J., concur.