IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 5, 2009 Session

## DENNIS G. LOHMANN v. RONALD D. LOHMANN, *et al.*

**Direct Appeal from the Chancery Court for Knox County**
**No. 151018-3     Hon. Michael W. Moyers, Chancellor**

_____

**No. E2008-02787-COA-R3-CV -  FILED OCTOBER 2, 2009**

_____

This is a suit between siblings over their mother's Estate.  Plaintiff sued his brother, defendant, alleging the defendant had a confidential relationship with the parties' mother and sought a judgment declaring that certain transactions made by the defendant on behalf of the mother were void.  Upon hearing the evidence, the Trial Court held the evidence established a presumption of undue influence and the defendant did not rebut the presumption.  The Court ruled that the plaintiff is entitled to one-half of the proceeds of the annuity contracts and bank contracts, that the defendant had caused the plaintiff's name to be deleted as a beneficiary of those contracts, and the Court entered Judgment for the plaintiff in the amount of $211,830.86 against defendant and placed a lien upon the defendants' real property until the Judgment is paid.  Defendant has appealed and on appeal we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Richard L. Holcomb, Knoxville, Tennessee, for appellants, Ronald D. Lohmann, *et al.*

Jennifer E. Raby, Rockwood, Tennessee, for appellee, Dennis G. Lohmann.

# OPINION

Plaintiff, Dennis Lohmann, filed a Complaint against his brother, Ronald Lohmann, alleging that Ronald exerted undue influence over their mother, now deceased, and created animosity between their mother and Dennis, causing her to remove Dennis as her attorney-in-fact before her death, and also causing her to remove him from several joint accounts. Dennis alleged that his mother, Anne Lohmann, appointed Ronald as her attorney-in-fact, thus creating a confidential/fiduciary relationship, which he then abused to gain monetary benefit. Dennis asked for a judgment declaring the transactions void, or a declaration that Ronald was holding the assets in trust for the benefit of Anne's estate.

Ronald answered, denying any allegations of misconduct, and asserted that any animosity between Anne and Dennis was the result of Dennis' own conduct, which offended their parents. Dennis then amended his Complaint, naming Patricia Lohmann (Ronald's wife) as a defendant. He alleged that Ronald signed certain documents changing the status of their mother's assets, and that Ronald deposited certain assets he received from his mother after her death into a joint account with his wife, and then used the same to purchase certain parcels of real property now jointly held with his wife. Dennis attached forms showing the change in beneficiary on annuity accounts held by the decedent. Defendants answered, stating that Ronald signed documents for Anne in his role as her attorney-in-fact.

At the trial of the case, the parties entered a detailed Stipulation of Facts. The pertinent stipulations are that Eric Lohmann, father of Ronald and Dennis, died October 13, 1997, at the age of 85. On November 14, 1997, Anne Lohmann applied for two Allmerica annuity policies, and named Ronald and Dennis as the beneficiaries. Around that time, Anne executed a Durable Power of Attorney and named both Ronald and Dennis as her attorneys-in-fact. On December 31, 1997, Anne revoked said Power of Attorney.

On February 4, 1998, Ronald took Anne to First American Bank where she had her signature guaranteed on a document, that is addressed "to whom it may concern", and directs that Dennis be removed as a beneficiary of her account. It contains a blank space for her account number to be filled in. On February 19, 1998, a joint account was opened at First American in the names of Anne and Ronald Lohmann, and it was opened with the proceeds from an account that had been in the names of Anne, Ronald, and Dennis. Around this time, Ronald sent a copy to MBNA Bank, where there was a joint account in the names of Anne, Ronald, and Dennis.

On February 20, 1998, Anne executed a Will, and executed a Power of Attorney naming Ronald as her attorney-in-fact. On March 1, 1998, while Anne was hospitalized, Ronald signed her name to new beneficiary designation forms for her annuity policies. The beneficiary designations were changed from Dennis and Ronald to Ronald and his wife.

Anne died in the hospital on April 10, 1998. Two weeks before her death, Ronald

2

changed the locks on Anne's home, and when Dennis came to see Anne, he was not allowed access to her home. After Anne's death, Ronald submitted claims on the annuity policies, and received checks for $76,928.00 and $146,786.00. Ronald qualified as personal representative of his mother's estate on May 8, 1998. Ronald did not disclose to Dennis that he received the proceeds of the two annuity policies, and the bank accounts with First American and MBNA, until March 10, 2000. Ronald received $1,153.00 from MBNA, and $38,593.00 from First American. Anne's estate was closed on September 13, 2002.

Ronald was the first and only witness at the trial.[1]

Following the trial, the Court entered a Memorandum Opinion on July 2, 2008, finding that plaintiff and defendant were brothers, and were two of the four children of Anne and Eric Lohmann. The Court found that Dennis lived in Arizona and visited his parents when he was able. The Court found that Ronald lived in Tennessee and was able to spend a great deal more time with Anne, assisting her with her health and business needs.

The Court found that after her husband's death on October 13, 1997, Anne's health deteriorated and that Anne applied for two variable annuity policies with Allmerica Financial on November 14, 1997, and designated plaintiff and defendant as beneficiaries on the annuities. On the same date, Anne executed a power of attorney naming plaintiff and defendant as her attorneys-in-fact. She revoked this power of attorney on December 31, 1997, and in January 1998, Dennis began receiving emails and notes purportedly written by his mother, indicating that she was angry with him. Dennis responded with a letter to his mother on January 7, 1998, and with letters sent to John O'Conner, the family attorney.

The Court found that on February 17, 1998, Ronald took Anne to First American National Bank, where she purportedly executed a document indicating that Dennis was to be removed from her accounts. Ronald testified that Anne executed a number of these documents, and that he then filled in the account numbers indicating which accounts that Dennis was to be removed from. Funds from an account previously held in the names of Anne, Dennis, and Ronald were then used to open a new account that was in the names of Anne and Ronald only, as joint holders with right of survivorship. The Court found that on February 20, 1998, Anne executed a power of attorney naming Ronald as her attorney-in-fact, and on the same date she executed a Will which set up trusts for her other son, Eric, and daughter Marianne, and provided that the rest of her estate was to be divided equally between plaintiff and defendant.

On March 1, 1998, while Anne was hospitalized, Ronald signed her name to designation of beneficiary forms for her annuities, and the Court found that when initially questioned about the same, Ronald denied having exercised his power of attorney to sign Anne's name on the forms, but after Dennis hired a handwriting expert to analyze the signatures, Ronald admitted that he signed Anne's name as her attorney-in-fact. When asked why he named his wife

---

[1]Dr. James Sidney Alexander's deposition was filed in evidence.

and stepdaughter as contingent beneficiaries, he stated he was "taking care of his people".

The Court found that Anne died on April 10, 1998, and that approximately 2 weeks before her death, defendant changed the locks on her home, and denied plaintiff access when he was visiting his mother during her final illness. About a month later, Ronald qualified as the personal representative of Anne's estate in Knox County Chancery Court, and applied for payment of the annuity contracts. He received checks from Allmerica Financial for $76,928.54 and $146,786.29. He filed a tax return for Anne's estate, which shows that Marianne received $45,850.00, Eric received $120,293.00, Dennis received $159,793.00, and Ronald received $432,090.00. The Court found the discrepancies in the distribution of the estate to be compelling, considering the language of the Will which purported to distribute the remaining assets equally between plaintiff and defendant. As it was stipulated, Ronald did not disclose to Dennis that he was named sole beneficiary on the annuity contracts until March 2000.

The Court discussed that, pursuant to Tennessee case law, the existence of a confidential relationship (such as a power of attorney) combined with a transaction which benefits the dominant party creates a presumption of undue influence. The Court found that, in this case, the evidence of same "could hardly be more clear", in that defendant was attorney-in-fact for his mother when he changed the beneficiary designation on her annuity contracts to benefit himself and his family to the exclusion of plaintiff and the other siblings. The Court found that this created a rebuttable presumption of undue influence, and while the power of attorney was not yet in place when the MBNA and First American accounts were changed, there was also the taint of undue influence on those transactions, because defendant was the only sibling in a position to influence his mother's thinking and decision-making.

The Court found that Mrs. Lohmann was in very ill health during the last months of 1997 and the early months of 1998, and that she was distraught over the death of her husband and also over the impending death of her daughter. The Court found that when these events took place, she was 85 years old, and Dr. Alexander, a forensic psychiatrist, testified that she was susceptible to manipulation and undue influence, and was exhibiting signs of dementia. The Court found that defendant kept these transactions secret from plaintiff, and did not reveal the same for two years after Anne's death. The Court also found that these transactions, which had the effect of transferring the bulk of Anne's estate directly to defendant outside of probate, appeared to be "radically at odds" with the language of the Will, which provided that plaintiff and defendant should take equally.

The Court found that where there was a rebuttable presumption of undue influence, as in this case, the burden shifted to defendant to rebut the presumption by clear and convincing evidence of the fairness of the transaction. The Court noted the only evidence on this issue was defendant's own testimony, wherein he stated that in her last months, Anne became angry with plaintiff and independently decided to remove him as beneficiary on the disputed assets. The Court found the defendant's testimony was not credible, as it was uncorroborated and self-serving, and also because it did not comport with the intent expressed in the Will. The Court found that there was not clear and convincing evidence, nor even a preponderance of evidence, to rebut the presumption of

4

undue influence, and the Court ruled that plaintiff was entitled to one-half the proceeds of the annuity contracts and bank accounts, and also found that this was an appropriate case for an award of pre-judgment interest. The Court entered judgment for plaintiff in the amount of $211,830.86 against defendants, and placed a lien upon the defendants real property until the judgment was paid.

Defendants have appealed and raise these issues:

1.      Whether the Trial Court erred in shifting the burden to require the defendants to prove an absence of undue influence by clear and convincing evidence?

2.      Whether appellants met the burden of proof?

3.      Whether the case should be dismissed because of prior dismissals?

4.      Whether the judgment against Patrician Lohmann should be reversed, or in the alternative, whether she should be granted a new trial?

5.      Whether Ronald should have been permitted to testify as to his mother's instructions in acting as her attorney-in-fact?

6.      Whether equity requires that this case be remanded?

Ronald argues the Trial Court erred in finding that a confidential relationship existed, and in shifting the burden of proof to Ronald to show that there was no undue influence. The Trial Court had found there was a "legal" confidential relationship *vis a vis* the power of attorney, and also that there was a "family" type confidential relationship, because Anne and Ronald were mother and son, and there were suspicious circumstances surrounding the transactions at issue.

Essentially, Ronald argues the power of attorney was insufficient to create a legal confidential relationship because it was never exercised by him.

There is no question that a legal confidential relationship is established by virtue of execution of a power of attorney, where said power of attorney is exercised, and that the existence of such a relationship coupled with a transaction where the dominant party receives a benefit gives rise to a rebuttable presumption of undue influence. *Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1995). In this case, Anne executed a Power of Attorney naming Ronald her attorney-in-fact on February 20, 1998.

Ronald's argument regarding the existence of a legal confidential relationship at the time the annuity beneficiaries were changed misses the point. First, he argues that the power of attorney had not yet been executed when his mother sent the letter requesting the change of beneficiaries on or around February 17, 1998. There is no dispute, however, that the letter was insufficient to effectuate the change of beneficiary, as was evidenced by Exhibit 26, and that the

execution of additional forms was required. If the additional forms had not been later filled out and signed by Ronald, the change would not have taken effect, and the annuities would still have gone to Ronald and Dennis equally. Clearly, the power of attorney was in effect at the time the beneficiary on the annuities was actually changed. Also, Ronald admitted at trial that he signed his mother's name to the forms that actually changed the beneficiary on the annuities while his mother was hospitalized, and that he did so pursuant to his power as attorney-in-fact. The Court properly found that a legal confidential relationship existed between Anne and Ronald at the time the annuities beneficiary was changed, and there was no question that Ronald received the benefit of the change. Accordingly, the Trial Court properly found the presumption of undue influence arose and had to be rebutted by clear and convincing evidence with regard to the annuities.

The Trial Court concluded that no such legal confidential relationship had been established at the time the bank accounts were changed, but that a "family or other" type of confidential relationship did exist. While an ordinary parent/adult child relationship is not *per se* confidential, it can be if there is a showing that circumstances existed that could have destroyed the free will of the donor, such as where there are elements of dominion or control, where there is a showing of senility or physical/mental debility, or duress/fraud, etc. *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977). We give deference to the trial court's finding that a confidential relationship existed. *Wimley v. Wimley*, 2009 WL 2588998 (Tenn. Ct. App. Aug. 21, 2009).

Here, the Trial Court found there were suspicious circumstances which indicated that Anne's free will was destroyed, such as her advanced age and ill health, her dependence on Ronald for her day-to-day care/needs, her grief over the loss of her husband and anxiety over the health of her daughter and her own health problems, Ronald's involvement in all of her financial and personal affairs, Anne's unexplained change of heart toward Dennis, and Ronald's attempts to block contact between Anne and Dennis and to keep Dennis out of her life in the months before her death. The Court found it significant that Anne provided for Dennis in her Will executed on February 20, 1998, yet sent out letters of instruction days before asking that he be removed from her bank accounts and annuity policies. It was noted that the letters of instruction sent out to the banks and annuities were signed by Anne in blank form, and that the account numbers were later filled in by Ronald and then the letters were mailed to various financial institutions. While Ronald testified that this was done at his mother's direction and with her knowledge, the Trial Court found his testimony on these issues to be incredible and self-serving. The Court found that Ronald failed to show the fairness of these transactions, and the evidence does not preponderate against the Court's finding.[2]

_____

[2] Ronald argues that one of the bases for the Trial Court's finding, i.e. the fact that the Will provided for Ronald and Dennis "equally", was faulty, because the Will left the remainder of the amount Anne put in trust for her estranged son Eric to Dennis solely, and could have the effect of giving him a greater share under the Will. While this could be true, that result is contingent upon the circumstances of the trust at the time of Eric's death, which cannot be predicted. Further, this would not support Ronald's position that Anne was angry with Dennis and intended to cut him off financially - in fact, it would show just the opposite.

6

Ronald argues that even if the Trial Court properly shifted the burden of proof to him, he met the same by showing clear and convincing evidence that the transactions were fair. He argues that Anne executed her Will and Power of Attorney three days after sending out the letters of instruction which changed ownership of the bank accounts and attempted to change beneficiaries on the annuities, and this shows that she received independent legal advice at that time, and could have "undone" those transactions had she chosen to do so.

Once the presumption of undue influence has arisen, the burden of proof shifts to the defendant to show the fairness of the transaction(s) by clear and convincing evidence. Generally, this requires a showing that the donor received independent advice regarding the transaction in question, but can also be shown by a lack of suspicious circumstances surrounding the transaction. *Matlock*. A transaction is fair if the donor had the capacity to conduct the transaction and acted under her own free agency in so doing. *Matter of Estate of Depriest*, 733 S.W.2d 74 (Tenn. Ct. App. 1986). Also, in evaluating fairness, the court should look at whether the act is unjust or unnatural, and whether it differs from the donor's previously expressed intent. *Thompson v. Thompson*, 2009 WL 637289 (Tenn. Ct. App. Mar. 12, 2009). The fairness question is a question of fact. *Id.*

In this case, there is no evidence that Anne received independent legal advice regarding the transactions in question. The fact that she saw an attorney and executed a Will and Power of Attorney within days of sending out the letters of instruction does not demonstrate that she received any advice regarding these transactions. The Court found that many suspicious circumstances existed, such as the fact that Anne included Dennis at least equally with Ronald when writing her Will, and that she had previously listed him as co-owner and co-beneficiary on the assets in question, but then inexplicably changed ownership/beneficiaries (with Ronald's help) and left these assets solely to Ronald. We agree with the Trial Court who found the transactions in question clearly were at odds with Anne's intent as expressed in her Will, and in the way she had conducted her affairs prior to December 1997. We reiterate there was sufficient evidence to conclude that Ronald took advantage of his mother's fragile emotional and physical state so as to influence her to benefit him in these transactions, and that her own free will was destroyed.

Ronald presented no evidence to show that Anne was acting under her own free agency in leaving the bank accounts/annuities solely to Ronald. We conclude, as did the Trial Court, that Ronald failed to rebut the presumption of undue influence.

Next, Ronald argues that the case should have been dismissed based on *res judicata*, which argument was raised for the first time post-trial. *Res judicata* is a defense that must be raised in answer to a claim, *see Usrey v. Lewis*, 553 S.W.2d 612 (Tenn. Ct. App. 1977), which was not

It should also be noted that Ronald's argument regarding "unfairness" if the judgment is upheld because Ronald would receive less from the estate than Dennis is also inaccurate, because the assets in dispute herein passed outside the estate, and the Trial Court's ruling does nothing to change the fact that Ronald got nearly 3 times more of his mother's estate than Dennis did - it simply divides these non-probate assets equally between the two siblings.

done in this case. Moreover, for *res judicata* to apply, there must be two suits between the same parties on the same cause of action. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446 (Tenn. 1995). In this case, the suit filed in federal court did not involve the same defendants and the same cause of action. This issue is without merit.

Next, appellants argue there should have been no judgment entered against Patricia. It was stipulated, however, that she jointly owned certain properties/accounts that were undisputedly purchased/funded with the proceeds of the assets in question. Thus, the judgment which voided the disputed transactions and placed liens upon the properties would necessarily have to include her. This issue is also without merit.

Ronald also argues that he was not allowed to testify regarding the instructions Anne gave him with regard to the assets in dispute, and that the hearsay exception found in Tenn. R. Evid. 803(1.2)(F) is applicable to this case to allow his testimony. This rule permits a "statement offered against a party that is . . . a statement by a person that is in privity of estate with the party." In other words, for these alleged statements Ronald seeks to rely upon that were made by Anne to be introduced against Dennis, Anne and Dennis would have to be in privity of estate. This rule was intended to allow admissions by predecessors in title to come in against a current titleholder party. *See* Annotations to Rule. This rule simply has no application to the facts of this case. Moreover, this argument was not raised at trial and cannot be raised for the first time on appeal. *Simpson v. Frontier Community Credit Union.*, 810 S.W.2d 147 (Tenn. 1991).

Finally, Ronald argues that this case should be remanded pursuant to principles of equity because his attorney failed to adequately represent his interests in certain matters. There is no such recourse in the realm of civil law for alleged ineffective assistance of counsel, and if Ronald has any claim in that regard, it would have to be addressed in a claim against his attorney. This issue is also without merit.

The Judgment of the Trial Court is affirmed and the cause remanded with the cost of the appeal assessed to Ronald D. Lohmann.

_____
HERSCHEL PICKENS FRANKS, P.J.

8