# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 16, 2011 Session

## IN RE: THE ESTATE OF FRANKLIN STEADMAN MURDAUGH, BARBARA MURDAUGH WARNER v. RUDY W. YOUNG

### Direct Appeal from the Chancery Court for Madison County
#### No. 64704     Tony Childress, Chancellor

### No. W2011-00041-COA-R3-CV - Filed December 8, 2011

This case arises from a will contest. Appellant, the executor and sole beneficiary of the contested will, appeals the trial court's finding that Appellant did not met his burden to rebut, by clear and convincing evidence, the presumption of undue influence based upon the existence of a confidential relationship between Appellant and Decedent. Finding no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, The Estate of Rudy W. Young.

Mark S. McDaniel, Memphis, Tennessee, for the appellee, Barbara Murdaugh Warner.

### OPINION

Franklin Steadman Murdaugh ("Decedent") died testate on February 24, 2006, at the age of forty-three. The Decedent was a college graduate, an accomplishment he achieved in his mid-thirties. He was unmarried and had no children. Decedent had a long history of alcohol and drug abuse. The Decedent executed a will dated September 9, 2004 (the "Will"). It is undisputed that an attorney assisted the Decedent in preparing the Will. Dr. Rudy W. Young, a dentist, ("Appellant," or "Proponent") is the Decedent's cousin-in-law. Dr. Young was named as the Executor and sole beneficiary of the Will. It is undisputed that Dr. Young was aware, in September 2004, that the Decedent had executed the Will and that the Will named him as the sole beneficiary.

Dr. Young's dental license has been suspended several times for various offenses, including prescribing large amounts of controlled substances. Dr. Young provided dental care to the Decedent, starting in 1989 and continuing until Decedent's death. According to the record, Dr. Young prescribed hydrocodone to the Decedent, despite Dr. Young's knowledge of Decedent's addiction problems. On December 4, 2008, Dr. Young entered guilty pleas in the United States District Court for the Western District of Tennessee on charges of: (1) unlawfully, knowingly and intentionally possessing hydrocodone, a Schedule III controlled substance, with the intent to distribute; (2) distributing hydrocodone; and (3) knowingly and intentionally omitting to file a mandatory report with the Drug Enforcement Administration as required with the distribution of hydrocodone.

On March 30, 2006, Dr. Young submitted the Will for probate. By Order of March 30, 2006, the Will was admitted to probate, and the Estate of Franklin Steadman Murdaugh (the "Estate") was opened. On December 6, 2006, the Decedent's sister Barbara Murdaugh Warner ("Appellee," or "Contestant") filed a complaint for will contest, alleging, in relevant part, that "a special and confidential relationship existed between the [Decedent] and [Dr. Young], such that the [Decedent] was especially influenced by the persuasion of [Dr. Young]." In support of this allegation, Ms. Warner averred that Dr. Young was not only the Decedent's dentist, but that he was also supplying Decedent with illegally prescribed hydrocodone. The record reveals that the Decedent and the Contestant did not have a very good relationship. In fact, the relationship that they had was hostile, and this hostility stemmed from disputes over their father's estate and other family issues. On December 27, 2006, Dr. Young answered the will contest and denied the material allegations contained therein.

The will contest was subsequently transferred to the Chancery Court for Madison County. After a motion to recuse was granted and a new trial judge was assigned, the matter finally proceeded to hearing on September 15, 2010. The trial court's order of November 18, 2010 specifically states that the parties stipulated as follows:

> The parties stipulated that the proponent of the will [i.e., Dr. Young] could prove that the will was validly executed. The parties also stipulated that the contestant of the will [i.e., Ms. Warner] could prove that a confidential relationship existed between Mr. Murdaugh and [] Rudy Young. In fact, [Dr. Young] requested that the Court's focus should be on his burden of rebutting the presumption of undue influence.

Following the hearing, the trial court concluded that Dr. Young had not rebutted the presumption of undue influence, and found that the Will was, therefore, void. Dr. Young

appeals. The sole issue for review is:

> Whether the trial court erred in finding that Dr. Young had not
> met his burden to rebut the presumption of undue influence
> arising from his confidential relationship with the Decedent?

Before addressing the issue, we first note that our review of the trial court's findings of fact is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Watson v. Watson**, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993); **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See* **McCaleb v. Saturn Corp.**, 910 S.W.2d 412, 415 (Tenn. 1995); **Whitaker v. Whitaker**, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. **Whitaker**, 957 S.W.2d at 837; *see also* **Walton v. Young**, 950 S.W.2d 956, 959 (Tenn. 1997).

As noted above, the parties stipulated that Dr. Young had a confidential relationship with the Decedent. However, it is well settled that proof of a confidential relationship is not, by itself, sufficient to make out a *prima facie* claim of undue influence. **Kelley v. Johns**, 96 S.W.3d 189, 198 (Tenn. Ct. App. 2002). Consequently, Ms. Warner must also show the existence of other suspicious circumstances that would show that the Will was not entirely Decedent's free and independent act. *See* **id**. Suspicious circumstances of undue influence often include:

> (1) the existence of a confidential relationship between the
> testator and beneficiary;
> (2) the testator's physical or mental deterioration;
> (3) the beneficiary's active involvement in procuring the will;
> (4) secrecy concerning the will's existence;
> (5) the testator's advanced age;
> (6) the lack of independent advice in preparing the will;
> (7) the testator's illiteracy or blindness;
> (8) the unjust or unnatural nature of the will's terms;

(9) the testator being in an emotionally distraught state;
(10) discrepancies between the will and the testator's expressed intentions; and
(11) fraud or duress directed toward the testator.

*Kelley*, 96 S.W.3d at 196.

The existence of a confidential relationship, together with a transaction by which the dominant party obtains a benefit from the other party or another suspicious circumstance, triggers a presumption of undue influence. *Roberts v. Chase*, 25 Tenn. App. 636, 166 S.W.2d 641, 650–51 (1942). The record in this case clearly demonstrates not only that Dr. Young had a confidential relationship with the Decedent, but also that the Decedent suffered from prescription drug addiction, and that Dr. Young was the Executor and sole beneficiary under the Will. These undisputed facts, coupled with Dr. Young's stipulation that he had a confidential relationship with the Decedent, are sufficient to give rise to a presumption of undue influence. The presumption of undue influence can only be rebutted by clear and convincing evidence of the fairness of the transaction. *Richmond v. Christian*, 555 S.W.2d 105, 107 (Tenn.1977). The difficulty in proving the fairness of a transaction varies depending on the circumstances of a particular case and the strength of the presumption of undue influence. *Id*. at 108. A lack of suspicious circumstances can rebut the presumption. *Parish v. Kemp*, 308 S.W.3d 884, 891 (Tenn. Ct. App. 2008) (citing *Simmons v. Foster*, 622 S.W.2d 838, 841 (Tenn. Ct. App. 1981)). A showing that the testator had independent advice is another way of showing the fairness of the transaction. *Matter of Estate of Depriest*, 733 S.W.2d 74 (Tenn. Ct. App. 1986). "A showing . . . of independent advice is ordinarily required where it is a reasonable requirement and where it would be difficult to show the fairness of the transaction without it." *Id*. at 79. Fairness, in the context of a will contest involving allegations of undue influence, has been explained as follows:

It is understandable that judges and lawyers might be confused in this area because the appellate courts have not carefully defined what is meant by the fairness of the transaction. Without the term being carefully defined the average jury might assume that it was being asked to find whether the person benefitting from the will deserved what the will provided. That is not the meaning of the term. The jury should not be concerned with the question of whether the testator did right by those who ordinarily would be the objects of the testator's bounty. The jury's function is limited to a determination of the testator's capacity to make a will and whether the provisions in the will were arrived at through the free agency of the testator rather

-4-

than through the imposition of someone else's will. If the jury finds in favor of the will on these two questions it has found that the transaction was fair.

*Matter of Estate of Depriest*, 733 S.W.2d at 79.

The trial court's conclusion that Dr. Young had not met his burden of proof to rebut the presumption of undue influence was based on the following, relevant, findings, as set out in the November 18, 2010 order:

> [A]t the trial of this matter, which occurred on September 15, 2010, Teddy Hazelhurst, Kevin Cox, John Byrum, David Simpson, and the Contestant testified as witnesses. Three (3) exhibits were introduced into evidence. After due consideration of all the evidence. . .the entire record, the parties' stipulations and after considering the credibility of all witness, the Court[] [finds] as follows:
>
> ***
>
> Mr. Young had a daughter with whom Mr. Murdaugh was exceptionally close. According to the will Mr. Young's daughter was to receive the estate if Mr. Young passed away before Mr. Murdaugh. Mr. Murdaugh had a history of using legal substances such as alcohol to excess, of using legal substances illegally, and using illegal substances. Mr. Murdaugh also used hydrocodone both legally, he had a prescription, and illegally, he obtained and used hydrocodone for which he did not have a prescription. Mr. Murdaugh used hydrocodones to excess, and Mr. Young knew that Mr. Murdaugh had a use problem with hydrocodones. Mr. Young also had substance abuse problems of his own, and at times, he and Mr. Murdaugh would share drugs such as morphine, hydrocodone and dilaudid. Mr. Young was also a dentist, and prior to the execution of the will, Mr. Young prescribed hydrocodone tablets to Mr. Murdaugh. In fact, for several years [] between 1996 and 2002, Mr. Young prescribed hydrocodone tablets to Mr. Murdaugh when there was no legitimate medical purpose to prescribe the drug. In 2002 Mr. Murdaugh moved into Mr. Young's home, and for a period of time between the

time Mr. Murdaugh moved into Mr. Young's home and 2004 Mr. Young did not write Mr. Murdaugh prescriptions for hydrocodone. In 2004, however, Mr. Young wrote Mr. Murdaugh four (4) prescriptions for hydrocodone, and when ask[ed] "Were those valid prescriptions for dental difficulties or was this more a matter of addiction?" Mr. Young testified, "Probably addiction." At the time the will was executed Mr. Young was providing Mr. Murdaugh with a place to live and an automobile to drive. . . .

We have reviewed the entire record and conclude that the foregoing findings of fact are established by the preponderance of the evidence therein. Based upon these findings, the trial court made the following, relevant, conclusions of law:

There is undoubtably reason [] to believe that Mr. Murdaugh executed the will because Mr. Young provided him with a home and automobile, or because he had affection toward Mr. Young's daughter, or because he had a bad relationship with his sister. While these are all legitimate reasons for executing a will, the Court does not find or conclude that these were the reasons why Mr. Murdaugh executed the will. Instead, the Court finds and concludes that Mr. Young used his prescription writing privileges to induce Mr. Murdaugh, whom Mr. Young knew had use issues with substances such as hydrocodone, into executing the will that named him as beneficiary. In other words, Mr. Young used his prescription writing privileges to impose his will on Mr. Murdaugh. The Court did consider all the evidence submitted by the Proponent of the will, including the fact that an attorney did prepare the will. This evidence, however, simply did not eliminate the substantial doubts the Court had surrounding whether or not the will was arrived at through the free agency of Mr. Murdaugh. As stated above, the Court did not find that the will was arrived at through the free agency of Mr. Murdaugh.

\*\*\*

The Proponent of the will has not carried his burden of rebutting the presumption of undue influence by clear and convincing evidence, and since the will was procured by undue

influence, the will is declared void.

As discussed above, based upon the stipulation of the parties and the attendant circumstances, the presumption of undue influence attached in this case. The burden then shifted to Dr. Young, as the Proponent of the will, to rebut the presumption of undue influence by clear and convincing evidence. The Tennessee Supreme Court has defined "clear and convincing" evidence as more exacting than the preponderance of the evidence standard but not requiring such certainty as beyond a reasonable doubt. ***Hughes v. Bd. of Prof'l. Responsibility. of Sup. Ct. of Tenn.***, 259 S.W.3d 631, 641 (Tenn. 2008) (quoting ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). "Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." ***O' Daniel v. Messier***, 905 S.W.2d at 188 (citations omitted).

To rebut the presumption of undue influence, Dr. Young provided evidence showing that: (1) Decedent had a close relationship with Dr. Young's daughter; (2) Dr. Young provided housing and an automobile to the Decedent; and that (3) Decedent did not have a good relationship with his immediate family. However, these evidentiary points are somewhat of a double-edged sword. While these facts may support Dr. Young's contention that it was Decedent's love for Dr. Young's family, and Dr. Young's largess toward Decedent that led to his being named as the Decedent's sole beneficiary, these facts could just as easily support a finding of undue influence. The fact that Decedent lived with Dr. Young and his family, and the fact that he was estranged from his sister could lead a fact finder to conclude that it was Decedent's fear of losing his situation, rather than his autonomy, that gave rise to the Will. Consequently, this evidence does little to rebut the presumption of undue influence. Dr. Young also relies upon the fact that an attorney prepared the Will. As noted above, a showing that the testator had independent advice is one way of showing the fairness of the transaction ***Matter of Estate of Depriest***, 733 S.W.2d at 79. However, the existence of independent advice may not be sufficient to rebut a presumption of undue influence especially in a case, such as this, where the particular circumstances strengthen the presumption of undue influence. ***Richmond***, 555 S.W.2d at 107. It is undisputed that Decedent abused prescription drugs. Given the fact that, in addition to providing housing and transportation to the Decedent, Dr. Young was also the primary supplier of Decedent's hydrocodone, we agree with the trial court that independent advice, without more, is insufficient to clearly and convincingly rebut the presumption of undue influence. From the totality of the circumstance, we cannot conclude that the trial court erred when it found that this Will was not procured through the free agency of the Decedent but rather through the imposition of Dr. Young's influence. ***Matter of Estate of Depriest***, 733 S.W.2d at 79.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Rudy W. Young, and his surety.

_____

J. STEVEN STAFFORD, JUDGE